[No. S106718. Aug. 26, 2004.]

SAV-ON DRUG STORES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERT ROCHER et al., Real Parties in Interest.

322

**Counsel**

Akin Gump Strauss Hauer & Feld, W. Randolph Teslik, Joel M. Cohn, William A. Norris, Rex S. Heinke, L. Rachel Helyar and Sandra M. Lee for Petitioner.

Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Petitioner.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Kelly L. Hensley and Douglas R. Hart for California Retailers Association and National Retail Federation as Amici Curiae on behalf of Petitioner.

Law Offices of Steven Drapkin and Steven Drapkin for Employers Group as Amicus Curiae on behalf of Petitioner.

Seyfarth Shaw and Steven B. Katz for Costco Wholesale Corp., Earl Scheib, Inc., Staples, Inc., and Tuneup Masters, Inc., as Amici Curiae on behalf of Petitioner.

Paul, Hastings, Janofsky & Walker, Paul Grossman and Patricia M. Berry for California Employment Law Council as Amicus Curiae on behalf of Petitioner.

Fred J. Hiestand for Civil Justice Association of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Riordan & Horgan, Dennis P. Riordan, Donald M. Horgan; Righetti ◆ Wynne, Matthew Righetti, Edward J. Wynne, John J. Glugoski, J.E.B. Pickett; Daniels, Fine, Israel & Schonbuch, Paul R. Fine, Scott A. Brooks, Craig S. Momita; Kumetz & Glick, Fred J. Kumetz, Stephen Glick; Law Offices of Ian Herzog, Ian Herzog and Evan D. Marshall for Real Parties in Interest.

Brad Seligman; Saperstein, Goldstein, Demchak & Baller, Goldstein, Demchak, Baller, Borgen & Dardarian, David Borgen, Laura L. Ho, Joshua Konecky and Darci E. Burrell for The Impact Fund, California Rural Legal Assistance Foundation, the Legal Aid Society-Employment Law Center, Mexican American Legal Defense and Educational Fund, Asian Law Caucus, Asian Pacific American Legal Center of Southern California, La Raza Centro Legal, Inc., Women's Employment Rights Clinic of Golden Gate University School of Law, Bet Tzedek Legal Services, East San Jose Community Law Center, Professor Gary Blasi, University of California, Los Angeles School of Law and Professor Joseph Grodin, University of California, Hastings College of Law as Amici Curiae on behalf of Real Parties in Interest.

Jeffery K. Winikow; Van Bourg, Weinberg, Roger & Rosenfeld, Ellyn Moscowitz, Sandra Rae Benson; Spiro, Moss, Barness, Harrison & Barge, Dennis F. Moss, Steven M. Harrison, Ira Spiro and Rene L. Barge for California Employment Lawyers Association, California Teamsters Public Affairs Council, Los Angeles/Orange County Building and Construction

Trades Council, AFL-CIO, Alameda County Building and Construction Trades Council, AFL-CIO and Contra Costa County Building and Construction Trades Council, AFL-CIO as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**WERDEGAR, J.**—The question presented is whether the trial court abused its discretion in certifying as a class action this suit for recovery of unpaid overtime compensation. We conclude it did not and accordingly reverse the judgment of the Court of Appeal.

### Background

Plaintiffs Robert Rocher and Connie Dahlin, on behalf of themselves and others similarly situated, brought this action against defendant Sav-on Drug Stores, Inc., a drugstore chain. The operative second amended complaint alleges violation of the overtime statutes (Lab. Code, § 1194 et seq.) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), as well as conversion, for which plaintiffs seek damages and injunctive and declaratory relief. Underlying each cause of action are factual allegations that defendant misclassified as exempt from the overtime laws and failed to pay overtime compensation owed to plaintiffs and similarly situated employees who worked during the relevant period at defendant's retail stores in California.

The Legislature has commanded that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (Lab. Code, § 510, subd. (a).) The Industrial Welfare Commission (IWC), however, is statutorily authorized to "establish exemptions from the requirement that an overtime rate of compensation be paid . . . for executive, administrative, and professional employees, provided [inter alia] that the employee is primarily engaged in duties that meet the test of the exemption, [and] customarily and regularly exercises discretion and independent judgment in performing those duties . . . ." (*Id.*, § 515, subd. (a).)

During the period covered by the complaint, defendant compensated plaintiffs as salaried managers, exempt from the overtime wage laws. Wage orders relating to the mercantile industry promulgated by the IWC and codified at California Code of Regulations, title 8, section 11070 provided during that same period an exemption from the overtime requirements for "persons employed in administrative, executive, or professional capacities."

The original IWC Wage Order No. 7-98 defined this as one "engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment."[1] The underlying merits of this litigation concern whether or not plaintiffs and those similarly situated properly were classified and paid under this exemption.

Our present inquiry concerns the trial court's granting of plaintiffs' motion for class certification. In support of their motion, plaintiffs argued that class members (i.e., defendant's operating managers, hereafter sometimes OM's, and assistant managers, hereafter sometimes AM's) had, on the basis of their title and job descriptions and without reference to their actual work, uniformly been misclassified by defendant as exempt employees. In fact, defendant's OM's and AM's were *non*managerial, *non*exempt employees under relevant law. Moreover, defendant's store operations were "standardized." Accordingly, the duties and responsibilities of defendant's OM's and AM's were similar in critical respects from region to region, area to area, and store to store. Class members generally performed nonexempt work in excess of 50 percent of the time in their workday, and their workday routinely included work in excess of eight hours per day and/or 40 hours per week. Notwithstanding these facts, plaintiffs contended, class members were not paid statutorily mandated overtime compensation.

In opposing certification, defendant argued that whether any individual member of the class is exempt or nonexempt from the overtime requirements depends on which tasks that person actually performed and the amount of time he or she actually spent on which tasks. The actual activities performed by its OM's and AM's, and the amount of time spent by each OM and AM on exempt activities, defendant contended, varied significantly from store to store and individual to individual, based on multiple factors, including store location and size, physical layout, sales volume, hours of operation, management structure and style, experience level of managers, and number of hourly employees requiring supervision. For this reason, defendant argued, no meaningful generalizations about the employment circumstances of its managers could be made.

The trial court granted the certification motion, appointing plaintiffs to represent a class defined as "all current and former salaried [OM's] and current and former salaried [AM's] employed by defendant . . . in California

---

[1] The class period defined by the trial court's certification order is April 3, 1996, through June 22, 2001, inclusive. During that period, three applicable IWC wage orders, containing substantially similar executive exemptions, successively governed. (See IWC Wage Order No. 7-98 (eff. Jan. 1, 1998); IWC Wage Order No. 7-2000 (eff. Oct. 1, 2000); and the current order, first adopted as IWC Wage Order No. 7-2001 (eff. Jan. 1, 2001) and codified as amended, Cal. Code Regs., tit. 8, § 11070, subd. (1)(A)(1).)

at any time between April 3, 1996 and June 22, 2001, inclusive." The parties have estimated that the class has between 600 and 1,400 members.

Defendant petitioned for writ relief. The Court of Appeal issued a writ of mandate commanding the trial court to vacate its order granting class certification and to enter a new and different order denying class certification. We granted plaintiffs' petition for review.

*Discussion*

■ We quite recently reviewed the established standards for class certification generally. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 [131 Cal.Rptr.2d 1, 63 P.3d 913] (*Lockheed*).) Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. (*Lockheed, supra,* at p. 1104, citing *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual*).) The "community of interest" requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (*Lockheed, supra,* at p. 1104.)

■ The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439–440 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).) A trial court ruling on a certification motion determines "whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; accord, *Lockheed, supra,* 29 Cal.4th at pp. 1104–1105.) The trial court in this case determined that plaintiffs had established by a preponderance of the evidence that common issues predominate and ruled that a class action is "superior to alternate means for a fair and efficient adjudication of the litigation."

We review the trial court's ruling for abuse of discretion. "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court ruling supported by

substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. . . . 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder, supra,* 23 Cal.4th at pp. 435–436; see also *Lockheed, supra,* 29 Cal.4th at p. 1106.)

Defendant does not contend the trial court erred in concluding the named plaintiffs have claims typical of the class and are adequate representatives thereof. The issue in dispute is whether the trial court abused its discretion in concluding that common issues predominate. For the following reasons, we conclude it did not.

■ As the focus in a certification dispute is on what type of questions— common or individual—are likely to arise in the action, rather than on the merits of the case (*Lockheed, supra,* 29 Cal.4th at pp. 1106–1107; *Linder, supra,* 23 Cal.4th at pp. 439–440), in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. (See *Lockheed, supra,* at p. 1108; *Anthony v. General Motors Corp.* (1973) 33 Cal.App.3d 699, 707 [109 Cal.Rptr. 254].) "Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 478 [174 Cal.Rptr. 515, 629 P.2d 23]; see *Lockheed, supra,* at p. 1106.)

As noted, plaintiffs allege that defendant during the class period classified its AM's and OM's as exempt from the overtime laws and failed to pay them overtime compensation even though, pursuant to defendant's uniform company policies and practices, they consistently worked overtime hours and, at least partly as a consequence of operational standardization imposed by defendant among its various stores, in fact spent insufficient time on exempt tasks to justify their being so classified. In moving for class certification, plaintiffs argued to the trial court that, if permitted to proceed on this theory, they could with common proof demonstrate, inter alia, that: (1) defendant required all class members to work more than 40 hours per week; (2) defendant deemed each class member exempt based on his or her job description rather than on any consideration of actual work performed; (3) defendant paid no overtime wages to any class member; (4) defendant categorically reclassified all of its AM's from exempt to nonexempt in December 1999, without changing their job descriptions or their duties; (5) defendant kept no records of class members' actual work activities; (6) defendant conducted no studies of how class members spent their work time; (7) defendant did not train class members on the difference between exempt

and nonexempt work; (8) defendant's AM and OM job descriptions were uniform throughout defendant's operations; and (9) most of the tasks that both plaintiffs' and defendant's evidence indicates AM's and OM's actually undertook were, as a matter of law, nonexempt. Plaintiffs contend the materials indicating defendant treated its AM's and OM's uniformly and assigned them to standardized store operations constitute substantial evidence that common issues will predominate even if individual damage computations ultimately are required.

In opposing certification, defendant argued that determining its liability, if any, for unpaid overtime compensation necessarily requires making individual computations of how much time each class member actually spent working on specific tasks. Accordingly, defendant argued, plaintiffs' evidence of policy uniformity and operational standardization is irrelevant and cannot amount to substantial evidence that common issues of law and fact will predominate in the action. In its briefing here, defendant emphasizes that any "[e]vidence, to be 'substantial' must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]) and that an appellate court considering whether there is substantial evidence to support a trial court ruling must consider the entire record (*id.* at p. 577).

Both parties are correct about the general principles guiding our inquiry. Indeed, "we must consider whether the record contains substantial evidence to support the trial court's predominance finding, as a certification ruling not supported by substantial evidence cannot stand." (*Lockheed, supra,* 29 Cal.4th at p. 1106.) But, "[w]here a certification order turns on inferences to be drawn from the facts, ' "the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287 [119 Cal.Rptr.2d 190]; accord, *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418].) We turn, therefore, to the record.

In moving for certification, plaintiffs presented, inter alia, defendant's "Assistant Manager" and "Operating Manager" job descriptions (pursuant to which defendant treated all AM's and OM's as exempt from the overtime laws for some or all of the class period),[2] defendant's form for conducting performance reviews of "management associates," and defendant's memoranda detailing scheduling, compensation and training programs for AM's

---

[2] Defendant concedes it "treated its OM's and AM's as exempt," claiming it did so "based on its reasonable expectation that managers in those positions would be performing primarily managerial duties." The record also contains defendant's interrogatory responses indicating it reclassified AM's "from a salary form of compensation to an hourly rate of pay on December 19, 1999," with "no change in the job description or job duties."

and OM's. Plaintiffs also presented the deposition of defendant's designated "person most knowledgeable," district manager Frank Paul DeGaetano, defendant's responses to plaintiffs' interrogatories, the interrogatory responses of named plaintiffs Rocher (an OM) and Dahlin (an AM), and the declarations of Mario Gardner (an AM), Richard Featherstone (an OM), and Benissa Clifford and Stephen Aldag (both general managers) describing their work and defendant's policies and procedures.

Defendant presented the declaration of Brad Adams, a human resources manager for defendant's Southern California Northern Area Drug Division, describing defendant's stores, policies, and procedures, and declarations from 51 current employees of defendant, each an AM or OM, describing their work.

Presuming in favor of the certification order, as we must, the existence of every fact the trial court could reasonably deduce from the record (*People v. Johnson, supra,* 26 Cal.3d at p. 576), we cannot say it would be irrational for a court to conclude that, tried on plaintiffs' theory, "questions of law or fact common to the class predominate over the questions affecting the individual members" (*Washington Mutual, supra,* 24 Cal.4th at p. 913). Rather, as the trial court concluded, the documents, depositions, declarations, and interrogatory responses presented by the parties comprise substantial evidence that common issues of law and fact will predominate over individual issues if the AM's and OM's overtime claims are tried as a class action.[3] They are evidence thereof because they comprise "testimony [and] writings . . . offered to prove" (Evid. Code, § 140), and having a "tendency in reason to prove" (*id.,* § 210), that fact. The evidence is substantial because it is not "qualified, tentative and conclusionary" (*Lockheed, supra,* 29 Cal.4th at p. 1111) but, rather, " 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value' " (*People v. Johnson, supra,* at p. 576).

■ The record contains substantial, if disputed, evidence that deliberate misclassification was defendant's policy and practice. The record also contains substantial evidence that, owing in part to operational standardization and perhaps contrary to what defendant expected, classification based on job descriptions alone resulted in widespread de facto misclassification.[4] Either theory is amenable to class treatment. Unquestionably, as the Court of Appeal

---

[3] Defendant's motion for judicial notice and/or for the court to take additional evidence, and the request of amicus curiae Employers Group to take judicial notice, both are denied. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

[4] As earlier noted, defendant's interrogatory responses indicate that during the class period it reclassified all AM's from exempt to nonexempt with "no change in the job description or job duties." The court could rationally have regarded the reclassification as common evidence

observed, defendant is entitled to defend against plaintiffs' complaint by attempting to demonstrate wide variations in the types of stores and, consequently, in the types of activities and amounts of time per workweek the OM's and AM's in those stores spent on different types of activities. Nevertheless, a reasonable court crediting plaintiffs' evidence could conclude it raises substantial issues as to both whether a misclassification policy existed and whether, in any event, a uniform classification policy was put into practice under the standardized conditions alleged. A reasonable court, even allowing for individualized damage determinations, could conclude that, to the extent plaintiffs are able to demonstrate pursuant to either scenario that misclassification was the rule rather than the exception, a class action would be the most efficient means of resolving class members' overtime claims.

■    The record contains substantial evidence suggesting that the predominant issue in dispute is how the various tasks in which AM's and OM's actually engaged should be classified—as exempt or nonexempt. We previously have recognized in an overtime exemption case that task classification is a mixed question of law and fact appropriate for a court to address separately from calculating the amount of time specific employees actually spend on specific tasks. (*Ramirez v. Yosemite Water, Inc.* (1999) 20 Cal.4th 785, 803, fn. 5 [85 Cal.Rptr.2d 844, 978 P.2d 2] (*Ramirez*) [instructing trial court in salesperson overtime exemption case to "itemize the types of activities that it considers to be sales related" to "enable an appellate court to review whether the trial court's legal classifications are correct"].)

On the one hand, each of the 51 declarations by the AM's and OM's describing their actual work (including specific tasks) that defendant submitted in opposing certification states that the declarant spends a majority of his or her time on *managerial* tasks. Plaintiffs characterize most of that same work as *non*managerial.[5] Regardless of who is correct, the fact is the tasks

respecting both defendant's classification policies and the AM's actual status during the relevant period.

[5] Plaintiffs argued in their issues statements submitted in support of the certification motion that "[w]hether a series of tasks are exempt or non-exempt for purposes of California overtime laws" is a common issue, referencing the "finite list of tasks" found in defendant's own declarations by OM's and AM's. For example, plaintiffs argued, "[o]ne can prove that all class members spend a great deal of time greeting customers, selling, ringing up sales, answering the telephone, assisting customers, stocking shelves, merchandising, unloading and packing deliveries, and cleaning" without individual testimony from each class member. Plaintiffs also pointed to defendant's interrogatory responses. There, defendant concedes that both AM's and OM's "may occasionally perform" certain "types of nonexempt tasks" including "checking out customers, stocking shelves, facing shelves, and cleaning the store." Defendant also lists tasks (e.g., "supervising the unloading of trucks," "checking the quality and quantity of warehouse and vendor shipments," "safeguarding company assets," "opening or closing the store," "making the store safe for employees and customers," "ordering emergency repairs") that defendant contends were exempt, but plaintiffs contend were nonexempt.

discussed in both defendant's and plaintiffs' submissions comprise a reasonably definite and finite list. As plaintiffs argued to the trial court, "[t]he only difference between Defendant's declarations and Plaintiffs' evidence is that the parties disagree on whether certain identical work tasks are 'managerial' or 'non-managerial.' . . . This is an issue that can easily be resolved on a class-wide basis by assigning each task to one side of the 'ledger' and makes the manageability of the case not the daunting task Defendant has sought to portray." The trial court, in reaching its certification decision, expressly agreed.

Defendant, of course, does not concede the viability of plaintiffs' misclassification theories. Defendant denies it engaged in deliberate misclassification, claiming it "treated its OM's and AM's as exempt based on its reasonable expectation that managers in those positions would be performing primarily managerial duties." And defendant challenges plaintiffs' allegations respecting the effect of standardization in defendant's operations, pointing out, as the Court of Appeal observed, that its responses to plaintiffs' interrogatories state that the actual tasks performed by class members and the amount of time spent on those tasks vary significantly from manager to manager and cannot be adjudicated on a class-wide basis. But the trial court was within its discretion to credit plaintiffs' evidence on these points over defendant's, and we have no authority to substitute our own judgment for the trial court's respecting this or any other conflict in the evidence. (*Walker v. Superior Court, supra,* 53 Cal.3d at p. 272.) A reasonable court could conclude that issues respecting the proper legal classification of AM's and OM's actual activities, along with issues respecting defendant's policies and practices and issues respecting operational standardization, are likely to predominate in a class proceeding over any individualized calculations of actual overtime hours that might ultimately prove necessary.

█    The trial court was not deciding—nor are we—the merits of plaintiffs' case. We previously have recognized, in the certification context, that common issues may be present when a defendant's tortious acts, as here, "allegedly are the same with regard to each plaintiff." (*Lockheed, supra,* 29 Cal.4th at p. 1107 [noting defendant's concession]; see *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 362 [134 Cal.Rptr. 388, 556 P.2d 750] (*Occidental Land, Inc.*) [concerning defendant's alleged misrepresentations].) We need not conclude that plaintiffs' evidence is compelling, or even that the trial court would have abused its discretion if it had credited defendant's evidence instead. "[I]t is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874 [197 Cal.Rptr. 925], italics omitted, citing *People v. Johnson, supra,* 26 Cal.3d at pp. 576–577.)

Defendant asserts that the trial court failed to explain the basis for its finding that common questions predominate, but the record is to the contrary. At the certification hearing, the trial court examined the parties' contentions in detail. The court specifically noted plaintiffs' evidence that defendant classified its AM's and OM's "exempt without any exception, and rel[ied] exclusively on these titles alone in redefining who is exempt and who is not exempt. The predominance of the defendant's class-wide exemption is evidenced by the fact that there is no compliance program that's ever existed, and no single class member has ever received overtime compensation. The class-wide policy does not vary from store to store, or employee to employee." The court also noted defendant's "representative evidence, the declarations of 51 persons" describing the work of each, which "all say that the declarants spend more than 50 percent of their time on managerial activities."

The trial court also specified the evidence it was relying upon in certifying this action, referencing "all the moving papers," including the parties' statements respecting common issues, plaintiffs' multiple exhibits in support of the motion, and "the testimony of one Frank Paul, last name is D-E-G-A-E-T-A-N-O. He's . . . defendant's corporate representative, and the person most knowledgeable. And also the defendant's answers to interrogatories that have been involved." The relevant minute order states that "[t]he motion for class-certification is granted based upon the grounds recited into the record by the court." And the trial court's signed order expressly notes the order is based on "all admissible evidence."

■ Finally, the trial court applied the proper legal criterion for deciding whether to certify a class, stating that plaintiffs had established "by a preponderance of the evidence that the class action proceeding is superior to alternate means for a fair and efficient adjudication of the litigation." (Cf. *Washington Mutual*, *supra*, 24 Cal.4th at p. 914 [class treatment must "provide substantial benefits both to the courts and the litigants"].)

■ Defendant does not dispute that class certification may be appropriate in an overtime exemption case, only whether it is appropriate in this case. Defendant suggests this class action is likely to "degenerate into a multitude of mini-trials," but, as noted, the evidence to the contrary is substantial. As alleged, each class member's claim to unpaid overtime depends on whether he or she worked for defendant during the relevant period in a position that was misclassified either deliberately (on a class basis) or circumstantially (again, as a consequence of defendant's class-wide policies and practices). That calculation of individual damages may at some point be required does not foreclose the possibility of taking common evidence on the misclassification questions. (*Collins v. Rocha*, *supra*, 7 Cal.3d at p. 238 ["only the

issue of damages will require separate proof for each class member" if plaintiffs prove employer misrepresented job terms and conditions]; see, e.g., *Hypolite v. Carleson* (1975) 52 Cal.App.3d 566, 579–581 [125 Cal.Rptr. 221] [need to calculate wrongfully denied benefits individually does not defeat community of interest where class members allege claims based on the same invalid regulation].) In any event, "a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages." (*Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575].)

Defendant sweepingly asserts, without support, that the portion of plaintiffs' evidence that focused on defendant's class-wide policies and practices, rather than on "whether each class member is meeting the employer's reasonable expectations," is irrelevant to the predominance issue. But defendant does not suggest any per se bar exists to certification based partly on pattern and practice evidence or similar evidence of a defendant's class-wide behavior. California courts and others have in a wide variety of contexts considered pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other indicators of a defendant's centralized practices in order to evaluate whether common behavior towards similarly situated plaintiffs makes class certification appropriate.[6] Indeed, as the Court of Appeal recently recognized, the use of statistical sampling in an overtime class action "does not dispense with proof of damages but rather offers a different method of proof" (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 750 [9 Cal.Rptr.3d 544]).

Defendant characterizes plaintiffs' declarations generally as conclusory and containing "boilerplate," contrasting what it calls "Sav-on's 52 detailed,

---

[6] See, e.g., *International Brotherhood of Teamsters v. United States* (1977) 431 U.S. 324, 337–340 [52 L.Ed.2d 396, 97 S.Ct. 1843] (statistics bolstered by specific incidents "are equally competent in proving employment discrimination"); *Lockheed, supra,* 29 Cal.4th at pages 1106–1108 ("well sampling and other hydrological data" about "the pattern and degree of contamination" could, but was insufficient to, support "a theory that a defendant's negligence has necessitated increased or different monitoring for all, or nearly all, exposed individuals"); *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1279 [242 Cal.Rptr. 339] (certification of class action for wrongfully denied welfare benefits proper because "whether the County applied an unlawful sanctioning process" to deny eligibility "can be proved by reviewing the County's regulations, . . . the standard practices followed in making sanctioning decisions, as well as a *sampling* of representative cases"); *Stephens v. Montgomery Ward* (1987) 193 Cal.App.3d 411, 421 [238 Cal.Rptr. 602] (certification proponent satisfied commonality requirement with statistical data and analysis of retail chain's corporate structure supporting allegations respecting centralized control over employment decisions); see also *In re Simon II Litig.* (E.D.N.Y. 2002) 211 F.R.D. 86, 146–151 (tobacco case listing state, high court, other federal, and secondary authorities concluding aggregate proof is "consistent with the defendants' Constitutional rights and legally available to support plaintiffs' state law claims").

fact-specific declarations." Such observations, however, go to the weight of the evidence, a matter generally entrusted to the trial court's discretion. And, as noted, defendant as well as plaintiffs presented evidence respecting defendant's personnel policies and management structure along with evidence respecting individual managers' actual activities.

■ Defendant concedes that Mario Gardner's declaration described his duties as an AM in a manner that might permit certification had plaintiffs marshaled more such declarations, but argues this single declaration does not support class treatment. Defendant is mistaken. Evidence of even one credible witness "is sufficient for proof of any fact." (Evid. Code, § 411.) ■ And "questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses . . . and the determination of [any] conflicts and inconsistencies in their testimony are matters for the trial court to resolve." (*Thompson v. City of Long Beach* (1953) 41 Cal.2d 235, 246 [259 P.2d 649].) Moreover, as noted above, Mario Gardner's was not the only declaration plaintiffs presented to indicate AM's and OM's engaged primarily in nonexempt activities. Indeed, on plaintiffs' theory, even defendant's declarations may prove relevant on that point.

Nevertheless, defendant insists that because exempt employees are those engaged "in work which is primarily intellectual, managerial or creative, and which requires the exercise of discretion and independent judgment" (IWC Wage Order No. 7-98 (eff. Jan. 1, 1998), "the central factual issues in this dispute [are] the actual tasks performed by class members and the amount of time spent on each of those tasks." But even if some individualized proof of such facts ultimately is required to parse class members' claims, that such will predominate in the action does not necessarily follow.

■ We long ago recognized "that each class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action." (*Collins v. Rocha, supra,* 7 Cal.3d at p. 238.) Predominance is a comparative concept, and "the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate." (*Reyes v. Board of Supervisors, supra,* 196 Cal.App.3d at p. 1278; see *Lockheed, supra,* 29 Cal.4th at p. 1105; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 707–710 [63 Cal.Rptr. 724, 433 P.2d 732].) Individual issues do not render class certification inappropriate so long as such issues may effectively be managed. (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 473; see also *Occidental Land, Inc., supra,* 18 Cal.3d at pp. 363–364; *Washington Mutual, supra,* 24 Cal.4th at p. 922.)

■ Nor is it a bar to certification that individual class members may ultimately need to itemize their damages. We have recognized that the need for

individualized proof of damages is not per se an obstacle to class treatment (*Occidental Land, Inc., supra,* 18 Cal.3d at p. 363 [134 Cal.Rptr. 388, 556 P.2d 750] [home buyers' class action against developer]) and "that each member of the class must prove his separate claim to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper" (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*) [consumers' class action against finance companies]).

Accordingly, neither variation in the mix of actual work activities undertaken during the class period by individual AM's and OM's, nor differences in the total unpaid overtime compensation owed each class member, bar class certification as a matter of law. (*Vasquez, supra,* 4 Cal.3d at p. 815 ["although ultimately each class member will be required in some manner to establish his individual damages this circumstance does not preclude the maintenance of the suit as a class action"]; see *Daar v. Yellow Cab Co., supra,* 67 Cal.2d at p. 707 ["Nor is a common recovery necessary in order to establish a community of interest"]; *Los Angeles Fire & Protective League v. City of Los Angeles* (1972) 23 Cal.App.3d 67, 74 [99 Cal.Rptr. 908] ["differences in sub-groups as to assignments and ranks" among firefighters "in no way detract from" common issues in overtime class action].)

"It may be, of course, that the trial court will determine in subsequent proceedings that some of the matters bearing on the right to recovery require separate proof by each class member. If this should occur, the applicable rule . . . is that the maintenance of the suit as a class action is not precluded so long as the issues which may be jointly tried, when compared to those requiring separate adjudication, justify the maintenance of the suit as a class action." (*Vasquez, supra,* 4 Cal.3d at p. 815; see *Lockheed, supra,* 29 Cal.4th at p. 1105.) And if unanticipated or unmanageable individual issues do arise, the trial court retains the option of decertification. (*Lazar v. Hertz Corp.* (1983) 143 Cal.App.3d 128, 144 [191 Cal.Rptr. 849]; see, e.g., *O'Connor v. Boeing North American, Inc.* (C.D.Cal. 2000) 197 F.R.D. 404.)

Defendant mistakenly suggests that our decision in *Ramirez, supra,* 20 Cal.4th 785, bars class certification in this matter. Defendant argues that when plaintiffs in an overtime case seek class certification, "the trial court must determine whether the evidence shows that application of the *Ramirez* factors—the actual tasks performed by each class member, the amount of time each class member spent on those tasks, and how the class member's practices compare to the employer's reasonable expectations—raises common questions that predominate over individual issues." Defendant both misstates and overstates the significance of *Ramirez.*

*Ramirez* was an action for unpaid overtime brought by a bottled-water-route sales representative against his former employer. (*Ramirez, supra,* 20

Cal.4th at p. 790.) We reversed the Court of Appeal's ruling that the plaintiff was exempt under an IWC wage order defining "outside salesperson," largely because the court had inappropriately relied on certain federal regulations, which varied from California law, in making that determination. (*Id.* at p. 804.) In so doing, we explained that a court deciding whether an employee is an outside salesperson under the applicable state rule should inquire "into the realistic requirements of the job." (*Id.* at p. 802, italics omitted.) Specifically, we indicated, "the court should consider . . . how the employee actually spends his or her time" and "whether the employee's practice diverges from the employer's realistic expectations . . . ." (*Ibid.*)[7]

*Ramirez* was not a class action and, to that extent, is not apposite. In *Ramirez,* we did not even discuss certification standards, let alone change them. Accordingly, *Ramirez* is no authority for constraining trial courts' "great discretion in granting or denying certification" (*Linder, supra,* 23 Cal.4th at p. 435) or, more particularly as defendant asserts, for applying a particular set of "factors" whenever plaintiffs in an overtime case seek class certification. The certification of a class is a discretionary decision that demands the weighing of many relevant considerations. (*Id.* at pp. 435–436.) And even as an overtime exemption case, *Ramirez* is not particularly apposite. Our analysis was tied to the "logic inherent in the IWC's quantitative definition of outside salesperson" (*Ramirez, supra,* 20 Cal.4th at p. 802) and would not necessarily apply, or apply with the same force, in every exemption context. We expressed in *Ramirez,* for example, a concern that under a pure "actual activity" test, an employee assigned to sell might "evade a valid [outside salesperson] exemption" by his own "substandard performance" in selling. (*Ibid.*) No one suggests a similar concern applies here.

While we recognized that a trial court may have to resolve significant factual discrepancies when applying the salesperson exemption in a particular case (*Ramirez, supra,* 20 Cal.4th at p. 803), we did not in *Ramirez* purport to limit the types of evidence or methods of proof that parties to overtime disputes may bring to bear. Listing considerations relevant to the state test for "outside salesperson," we simply counseled trial courts to avoid sole reliance either on "an employer's job description" or on "the actual average hours the employee spent on sales activity" (*id.* at p. 802).

Presence in a particular overtime class action of the considerations reviewed in *Ramirez* does not necessarily preclude class certification. Any dispute over "how the employee actually spends his or her time" (*Ramirez, supra,* 20 Cal.4th at p. 802), of course, has the potential to generate

---

[7] It is to these considerations, apparently, that defendant means to refer when invoking what it calls "the *Ramirez* factors."

individual issues. But considerations such as "the employer's realistic expectations" (*ibid.*) and "the actual overall requirements of the job" (*ibid.*) are likely to prove susceptible of common proof. Defendant's "realistic expectations," in particular, may become relevant in this case, and a reasonable court could conclude these are susceptible of common proof.[8]

Defendant would have us extend *Ramirez* to shield employers from an action challenging a type of illegality that our decision in that case was actually designed to prevent. One of our core concerns in *Ramirez* was that "if hours worked on sales were determined through the employer's job description, . . . the employer could make an employee exempt from the overtime laws solely by fashioning an idealized job description that had little basis in reality." (*Ramirez, supra*, 20 Cal.4th at p. 802.) Here, defendant allegedly promulgated exempt job descriptions, but implemented policies and practices that failed to afford its AM's and OM's true managerial discretion, and standardized store operations so that managers were obliged to spend over 50 percent of their time doing the same tasks as their subordinates.[9] Defendant suggests we bar class certification of an action based on such allegations, on the somewhat ironic (and only half-stated) surmise that some individual AM's and OM's may, in fact, have labored below the 50 percent mark on nonexempt tasks notwithstanding defendant's alleged class-wide policies and practices either designed or destined to assure the contrary. We decline the invitation. Contrary to defendant's implication, our observation in *Ramirez* that whether the employee is an outside salesperson depends "first and foremost, [on] how the employee actually spends his or her time" (*Ramirez, supra*, at p. 802) did not create or imply a requirement that courts assess an employer's affirmative exemption defense against every class member's claim before certifying an overtime class action.

---

[8] Defendant claims it "treated its OM's and AM's as exempt based on its reasonable expectation that managers in those positions would be performing primarily managerial duties." Defendant's actual expectations (absent deliberate misclassification) presumably are indicated in its job descriptions and training materials, and as noted the record contains substantial evidence that whether these were realistic—in light of defendant's policies and practices, and of operational standardization—may be addressed with common evidence.

[9] Federal authority indicates that either allegation, if proved, would be sufficient to render the affected workers nonexempt and thus eligible for overtime. (Cf. *Donovan v. Burger King Corp.* (2d Cir. 1982) 675 F.2d 516, 518–519 [affirming Fair Labor Standards Act (FLSA) overtime award where assistant managers " 'spent at least half of their time doing the same work as the hourly employees' " as "a direct consequence of a deliberate corporate policy at the regional level which dictated 'ideal' ratios of hourly labor to production"]; *Donovan v. Burger King Corp.* (1st Cir. 1982) 672 F.2d 221, 228 [worker "whose primary duty is management may still fail to qualify" for FLSA "executive" exemption "if his managerial status coexists with the performance of a significant amount of menial work, as in the case of a working supervisor or 'strawboss' "].)

Moreover, defendant's proposed reading of *Ramirez* would require, essentially, that a certification proponent in an overtime class action prove the entire class was nonexempt whenever a defendant raises the affirmative defense of exemption. But in *Ramirez* itself we recognized that "the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." (*Ramirez, supra*, 20 Cal.4th at pp. 794–795; accord, *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562 [38 Cal.Rptr.2d 221] [an "employer bears the burden of proving an employee is exempt"].) Were we to require as a prerequisite to certification that plaintiffs demonstrate defendant's classification policy was, as the Court of Appeal put it, either "right as to all members of the class or wrong as to all members of the class," we effectively would reverse that burden. *Ramirez* is no authority for such a requirement, nor does the logic of predominance require it.

In sum, defendant's reliance on *Ramirez* is misplaced. Perhaps realizing this, the Court of Appeal did not rely on that case or even cite it. But the Court of Appeal went astray in other ways. Although its summary of the evidence submitted on certification was generally accurate, the Court of Appeal erred to the extent it engaged in any reweighing of that evidence.

After reviewing defendant's evidence respecting store variations, the Court of Appeal noted plaintiffs' evidence of defendant's uniform policies and standardization, plaintiffs' declarations from AM's and OM's relating their experience of what defendant's employees in those positions actually did, and the interrogatory evidence submitted both by defendant and plaintiffs also respecting actual tasks performed by class members. Thereafter, the court opined that plaintiffs' declarations were "not determinative" and "not conclusive" because defendant's evidence, in particular the declaration of defendant's human resources manager Brad Adams, "showed the work of all the AM's and OM's is not uniform or identical." But a reviewing court is not authorized to overturn a certification order merely because it finds the record evidence of predominance less than determinative or conclusive. The relevant question on review is whether such evidence is *substantial*.

The Court of Appeal also erred to the extent it stated or implied that the community of interest requirement for certification mandates that class members' claims be uniform or identical. Plaintiffs' theory does not depend on class members having identical claims, nor does the law of class certification require such. (*Vasquez, supra*, 4 Cal.3d at p. 809 ["a community of interest does not depend upon an identical recovery"].)

Finally, the Court of Appeal erroneously cited *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701] (*San Jose*) in

suggesting trial courts must "deny class certification when each member's right to recover depends on facts individual to the member's case." In *San Jose*, the trial court had certified a class of property owners pressing claims against a municipal airport. We reversed, remarking at one point that the general rule "that a class action cannot be maintained where each member's right to recover depends on facts peculiar to his case . . . remains viable in this state." (*Id.* at p. 459.) But reading this categorical extract out of context would misstate the established legal standard for commonality, which, as previously noted, is comparative.[10] Our holding in *San Jose* was, in fact, expressly comparative (see *San Jose, supra,* at p. 460 [comparing "the issues which may be jointly tried" with "those requiring separate adjudication"]), and we consistently have adhered to that approach (see, e.g., *Washington Mutual, supra,* 24 Cal.4th at pp. 913–914, quoting *San Jose, supra,* 12 Cal.3d at p. 460).

Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage individual questions.[11] For decades "[t]his court has urged trial courts to be procedurally innovative" (*San Jose, supra,* 12 Cal.3d at p. 453) in managing class actions, and "the trial court has an obligation to consider the use of . . . innovative procedural tools proposed by a party to certify a manageable class" (*Osborne v. Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 653 [243 Cal.Rptr. 815], citing *Occidental Land, Inc., supra,* 18 Cal.3d at p. 360, fn. 3; *Linder, supra,* 23 Cal.4th at p. 440 [in class actions, "trial courts must be accorded the flexibility 'to adopt innovative procedures' "]).[12] Such devices permit defendants to "present their

---

[10] The relevant comparison lies between the costs and benefits of adjudicating plaintiffs' claims in a class action and the costs and benefits of proceeding by numerous separate actions—*not* between the complexity of a class suit that must accommodate some individualized inquiries and the absence of any remedial proceeding whatsoever. (*Vasquez, supra,* 4 Cal.3d at pp. 815–816; *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1236–1237 [87 Cal.Rptr.2d 346].)

[11] See, e.g., *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1010, footnote 28 [25 Cal.Rptr.2d 550, 863 P.2d 795] (common fund); *Rosack v. Volvo of America Corp.* (1982) 131 Cal.App.3d 741, 761–763 [182 Cal.Rptr. 800] (bifurcation, subclasses); *Gonzales v. Jones* (1981) 116 Cal.App.3d 978, 985–986 [171 Cal.Rptr. 567] (administrative processing); *O'Connor v. Boeing North American, Inc.* (C.D.Cal. 1998) 184 F.R.D. 311, 327, and *Rodriguez v. McKinney* (E.D.Pa. 1994) 156 F.R.D. 118, 119 (questionnaire); *Ungar v. Dunkin' Donuts of America, Inc.* (E.D.Pa. 1975) 68 F.R.D. 65, 140 (single-issue hearings).

[12] Courts on occasion have conducted separate judicial or administrative miniproceedings on individualized issues. (See, e.g., *Lamb v. United Sec. Life Co.* (S.D.Iowa 1972) 59 F.R.D. 25, 33.) Individualized hearings may sometimes efficiently be assigned to special masters. (See, e.g., *Day v. NLO* (S.D.Ohio 1994) 851 F.Supp. 869, 874–876.) Perhaps, as plaintiffs suggest, in this case each class member's particularized overtime "damages sought may be calculated according to a standard formula" (*Occidental Land, Inc., supra,* 18 Cal.3d at p. 364) based on survey results (see, e.g., *MacManus v. A. E. Realty Partners* (1988) 195 Cal.App.3d 1106, 1117 [241 Cal.Rptr. 315]; *Braun v. Wal-Mart, Inc.* (Minn.Dist.Ct. 2003) 2003 WL 22990114). It is not our role at this stage either to devise or to dictate the methods by which a trial court

opposition, and to raise certain affirmative defenses." (*Day v. NLO, supra,* 851 F.Supp. at p. 876.)

Considerations of sound public policy buttress our conclusion. Labor Code section 1194 confirms "a clear public policy . . . that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers." (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429–1430 [95 Cal.Rptr.2d 57].) As defendant's own authority reminds us, California's overtime laws are remedial and are to be construed so as to promote employee protection. (*Ramirez, supra,* 20 Cal.4th at p. 794.) And, as we have recognized, "this state has a public policy which encourages the use of the class action device." (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 473.) " 'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' " (*Id.* at p. 469.)

Many of the issues likely to be most vigorously contested in this dispute, as noted, are common ones. Absent class treatment, each individual plaintiff would present in separate, duplicative proceedings the same or essentially the same arguments and evidence, including expert testimony. The result would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. "It would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence and decide the same issues." (*Boggs v. Divested Atomic Corp.* (S.D.Ohio 1991) 141 F.R.D. 58, 67.)[13]

### *Disposition*

For the foregoing reasons, we reverse the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

---

conducting a particular class action may choose to manage it. (See *Rosack v. Volvo of America Corp., supra,* 131 Cal.App.3d at p. 761.)

[13] " 'If the factual circumstances underlying class members' claims differ, or if class members disagree as to the proper theory of liability, the trial judge, through use of techniques like subclassing or [other judicial] intervention, may incorporate the class differences into the litigative process, and give all class members their due in deciding what is the proper outcome of the litigation.' " (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 473, quoting *Developments—Class Actions* (1976) 89 Harv. L.Rev. 1318, 1490–1492.)

**BROWN, J., Concurring.**—I agree that the trial court did not abuse its discretion in concluding that the common issues predominate and in certifying this action for recovery of unpaid overtime as a class action. Because I find the majority's reasoning less than clear, however, I write separately to explain my own reasons for reaching this conclusion.

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) As such, we generally will not disturb a trial court's ruling on class certification unless: (1) the ruling is not supported by substantial evidence; (2) "improper criteria were used"; or (3) "erroneous legal assumptions were made." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23] (*Richmond*).)

To obtain class certification, a party must establish, among other things, a "well-defined community of interest among the class members." (*Richmond, supra,* 29 Cal.3d at p. 470.) A well-defined community of interest exists if common questions of law and fact predominate. (*Ibid.*) Common issues may predominate even if "each member of the class must prove his separate claim to a portion of any recovery by the class . . . ." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*).) But "each member must not be required to individually litigate numerous and substantial questions to determine his right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701].)

"In order to determine whether common questions of [law and] fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916 [107 Cal.Rptr.2d 761].) I therefore begin my analysis by determining the issues and reviewing the law.

In their complaint, plaintiffs Robert Rocher and Connie Dahlin alleged that defendant Sav-on Drug Stores, Inc., misclassified its assistant managers (AM's) and operating managers (OM's) as exempt from the overtime wage laws. As a result, defendant improperly compensated plaintiffs and other similarly situated AM's and OM's as salaried managers and failed to pay them overtime compensation. Plaintiffs sought to certify as a class "all current and former salaried [OM's] and current and former salaried [AM's] employed by defendant . . . in California at any time between April 3, 1996

and June 22, 2001, inclusive." Thus, the primary issue framed by the pleadings is whether defendant's AM's and OM's are exempt from the statutory overtime provisions.

The question of whether defendant's AM's and OM's are exempt employees "is, like other questions involving the application of legal categories, a mixed question of law and fact." (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794 [85 Cal.Rptr.2d 844, 978 P.2d 2] (*Ramirez*).) In determining whether an employee is exempt, the trial court must inquire "into the *realistic* requirements of the job. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." (*Id.* at p. 802.) "[E]xemptions from statutory mandatory overtime provisions are narrowly construed." (*Id.* at p. 794.) "Moreover, the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." (*Id.* at pp. 794–795.)

With this framework in mind, I now turn to the question presented on appeal: whether there is substantial evidence to support the trial court's finding that the common issues of law and fact predominate. After carefully reviewing the evidence in the record in light of the relevant law, I conclude that there is substantial evidence to support the trial court's finding.

As an initial matter, the issue of whether defendant intentionally misclassified its managers as exempt employees is an issue common to both the AM and OM classes. This issue is not, by itself, sufficient to support the trial court's finding that the common issues predominate, because plaintiffs would still have to prove both liability and damages subsequent to the class judgment. (See *City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 463 ["Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability"].) But the existence of this common issue certainly supports the trial court's finding.

A review of the record then provides the additional evidence needed to substantiate the trial court's finding. With respect to the AM class, the declarations from individual AM's and OM's submitted by plaintiffs constitute substantial evidence that the common issues predominate. According to these declarants, defendant consistently required AM's to work over 40 hours a week. A former general manager and OM further averred that, based on

their years of experience at different stores owned and operated by defendant, "[t]he type of work performed by [AM's] does not vary by store. Each Sav-on store was and is operated in the same manner, and require[s] the same essential work, as one might expect in a chain of retail stores. Therefore, the actual work performed by [AM's] on a daily basis was virtually identical in Sav-on stores, and remains so." These declarations provide substantial evidence that the realistic requirements of the AM job are identical for all AM's and that AM's, on average, spend the same amount of time on the same types of tasks. Defendant's subsequent and independent decision to reclassify *all* AM's as nonexempt employees entitled to overtime compensation bolsters this conclusion. Accordingly, the trial court did not abuse its discretion in finding that the common issues predominate with respect to the AM class.

The same reasoning does not, however, apply to the OM class. While plaintiffs submitted multiple declarations attesting to the work and duties of AM's, they submitted *no* declarations attesting to the work and duties of OM's. Indeed, the only evidence in the record demonstrating that all OM's spend the same amount of time performing the same types of tasks comes from the special interrogatory responses of Rocher. But these statements are not sufficient to support the trial court's findings as to the OM class. Rocher merely states that *he*—and no other OM—spent over 50 percent of his time on nonexempt activities. And although Rocher asserts that "[d]efendant has an expressed policy and practice of requiring [OM's] to . . . spend a majority of their time performing nonexempt tasks," he provides no foundation or evidentiary support for this assertion. As such, his interrogatory responses are too qualified and conclusory to support the trial court's finding that plaintiffs will be able to establish defendant's liability for overtime compensation to the OM's by common evidence. (See *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1111 [131 Cal.Rptr.2d 1, 63 P.3d 913] (plur. opn. of Werdegar, J.) [holding that the evidence is "too qualified, tentative and conclusionary to constitute substantial evidence" in support of class certification]; see also *Lockheed Martin*, at p. 1114 (conc. opn. of Brown, J.).)

Nonetheless, a careful review of the record reveals substantial evidence to support the trial court's finding with respect to the OM class. In *Ramirez*, we suggested that the classification of tasks as exempt or nonexempt may be susceptible to common proof. (See *Ramirez, supra*, 20 Cal.4th at p. 803, fn. 5.) This appears to be especially true in this case where, as demonstrated by defendant's own evidence, the OM's perform a finite number of tasks on a regular basis. The record further indicates that plaintiffs and defendant disagree over the classification of many of the tasks regularly performed by

OM's.[1] Given the number and significance of the tasks in dispute, the trial court could reasonably conclude that the proper classification of these tasks, when combined with the classifications agreed upon by the parties, will largely resolve the issue of whether all OM's should be classified as exempt or nonexempt employees.[2] Finally, many of the variables that, according to defendant, render the OM's inappropriate for class treatment—like store type, store size, and the number of store employees—may form the basis for appropriate subclasses. The trial court could reasonably conclude that the creation of these subclasses would sufficiently reduce the need for individual litigation as to each member of the class. (See *Vasquez, supra,* 4 Cal.3d at p. 821 [noting that the creation of subclasses may promote the efficiency of a class action].) Accordingly, I find that the trial court did not abuse its discretion in certifying the class of AM's and OM's and join the majority in reversing the judgment of the Court of Appeal.

---

[1] Defining the precise contours of their disagreement is somewhat difficult due to the vagueness of the parties' descriptions of the tasks regularly performed by OM's. But, at a minimum, the parties appear to disagree over whether the following tasks should be classified as exempt or nonexempt: merchandising, the unloading/movement of inventory, customer service, cash handling, finance-related activities, and the opening/closing of the store.

[2] The same reasoning applies to the AM class as well.