ROTHSCHILD, P. J.,
Concurring. — I concur with some of the majority’s reasoning, and I concur in the judgment. Like the majority, I believe that this case presents questions that may be subject to common proof, and that the case must be remanded to the trial court for determination as to whether those common questions predominate and can be managed efficiently in a single trial. I write separately because I believe the majority has not accurately described the nature of the common questions, and as a consequence, they underestimate the difficulties of managing the trial of this case.
The majority opines that plaintiffs called into question the facial legality of the hospital’s policy regarding meal and rest breaks. But this is true only to a limited extent. The policy as written provided for a meal break “approximately half way between the beginning and ending of the employee’s shift.” It also allowed for two 10-minute rest periods “approximately halfway between starting time and an employee’s meal period, and between the meal period and an employee finishing work for the day.” For employees working what the hospital defined as a “normal work schedule” of “eight hours per workday,” the policy on its face plainly provided for a meal break within the first five hours of work, as required by Labor Code section 512, subdivision (a) and associated regulations.[1]
Plaintiffs have not based their theory of recovery primarily on the facial illegality of the hospital’s policy. Instead, they have proceeded on the theory that the hospital’s practices amounted to a de facto illegal policy. Plaintiffs have alleged that the hospital systematically understaffed its nursing positions, making it impossible for all employees to take all the breaks to which they were entitled. The question of whether such a policy existed presents a common question, subject to common proof. (See Duran v. U.S. Bank *422 National Assn. (2014) 59 Cal.4th 1, 37 [172 Cal.Rptr.3d 371, 325 P.3d 916] (Duran) [stating that certification could be appropriate if an employer “knowingly encouraged a uniform de facto practice inconsistent with” labor law]; Brinker Restaurant Corp. v. Superior Court (2012) 53 Cal.4th 1004, 1051 [139 Cal.Rptr.3d 315, 273 P.3d 513] [indicating that certification could be proper if the plaintiffs could provide “substantial evidence of a systematic company policy to pressure or require employees to work off-the-clock”].) As the majority notes, the Charter Oak Hospital applies a mathematical formula to determine the number of staff members needed, depending on the number of patients and severity of their conditions. (Maj. opn., ante, at pp. 401-402.) If the parties in this case introduce evidence establishing the number of nurses required according to the formula and the number of staff actually assigned to work at different times, they will go a long way toward determining whether plaintiffs’ theory, that the hospital was systematically understaffed, is correct.
Yet as the majority acknowledges, the existence of a common question or theory of recovery is not the entire story. For certification to be appropriate, the issues subject to common proof must predominate over individual issues. In addition, the court must be able to manage the litigation of individual issues within a trial. Although a lack of uniformity among class members is not a bar to certification (Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 333 [17 Cal.Rptr.3d 906, 96 P.3d 194]), devising a method for managing variation among class members is not a given. Duran, supra, 59 Cal.4th 1, provided an object lesson in manageability. The case involved a class of 260 employees who worked in sales positions for the defendant bank. The plaintiffs alleged that the employees were not exempt from minimum wage and overtime pay requirements, and the determination of this depended on whether the job reasonably required employees to spend the majority of their days selling outside the bank. The trial court permitted the parties to present evidence from only 20 plaintiffs. (Id. at pp. 16-17.) The court then extrapolated from those 20 to determine liability for all 260. (Id. at p. 24.) The Supreme Court rejected this method in part because the sample was likely skewed, but also because the trial court improperly prevented the defendants from introducing any evidence regarding the class members outside the sample of 20. (Id. at pp. 33-34.) As the Supreme Court noted, by “excluding relevant evidence central to the defense, the court here did not manage individual issues. It ignored them.” (Id. at p. 34.) This was error because “a class action trial management plan may not foreclose the litigation of relevant affirmative defenses, even when these defenses turn on individual questions.” (Ibid.)
This case is even more complex than Duran and may present even greater variability among putative class members. The class is four times as numerous, spread over different positions, with employees who may have had vastly differing experiences because they worked at different times, with *423 different lengths of experience and different supervisors. The evidence indicated that different employees had widely differing experiences on the job; some claimed they were frequently denied breaks, while others said this almost never happened. It is not obvious that the level of variability within the class is sufficiently low to allow for sampling (see Duran, supra, 59 Cal.4th at p. 33), nor that the hospital would be capable of defending itself by presenting evidence regarding the work experiences of all plaintiffs as a group. (See id. at pp. 34-35.)
Crucially, the individual evidence in this case would be relevant to defendants’ liability, not merely the extent of damages. As the Duran court noted, “Defenses that raise individual questions about the calculation of damages generally do not defeat certification. [Citation.] However, a defense in which liability itself is predicated on factual questions specific to individual claimants poses a much greater challenge to manageability. This distinction is important. As we observed in City of San Jose v. Superior Court [(1974)] 12 Cal.3d [447,] 463 [115 Cal.Rptr. 797, 525 P.2d 701]: ‘Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability.’ ” (Duran, supra, 59 Cal.4th at p. 30.) In a case like this one, where plaintiffs’ primary allegations are that the hospital had de facto illegal policies, as opposed to policies illegal on their face, individual evidence is likely to be central both to plaintiffs’ case and to the hospital’s defense. Indeed, the evidence introduced thus far includes not only statistical evidence that may be used to establish or challenge plaintiffs’ common theory of recovery, but also anecdotal reports from individual class members. At trial, the hospital will most likely defend itself by eliciting testimony that employees missed breaks only rarely, or delayed them voluntarily. The majority claims that “[i]f an employer fails to provide legally compliant meal or rest breaks, the court may not conclude employees voluntarily chose to skip those breaks.” (Maj. opn. ante, at p. 410.) But in this case, whether employees chose to skip breaks voluntarily is important to determining whether an illegal policy existed. The individual differences cannot simply be swept under the rug on the ground that they pertain only to damages. This is not a case where liability may be determined solely through common evidence, and the only reason to deal with individual issues is to ask, with respect to each class member, “whether he or she worked for defendant during the relevant period” in a position affected by the alleged illegal practice. (Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 332.) Plaintiffs’ own theory makes the experience of each individual necessary to determining liability.
The trial court is in a far better position than we are to determine whether these obstacles can be overcome, and it is for just this reason that trial courts *424 “are afforded great discretion in granting or denying certification.” (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

 Although the policy did not specifically provide for a second meal break for employees working more than 10 hours per day, it did not prohibit such a break. In any case, if the putative class were limited to employees who were denied a second meal break while working overtime, plaintiffs might be able to proceed on a claim that the policy was facially illegal.