OPINION
{¶ 1} This is an appeal from the judgment of the Common Pleas Court of Montgomery County overruling the motion of the appellants to certify this matter as a class action pursuant to Civ.R. 23.
 {¶ 2} Appellee Behr Dayton Thermal Products ("BDTP") is a limited liability company that manufactures air conditioners, evaporators, engine cooling modules, vapor canisters, valves and assemblies for automobiles. Previously owned by DaimlerChrysler Corporation, BDTP was operated as a joint venture of Behr America, Inc. ("Behr") and DaimlerChrysler Corporation from February 2002 until May 2004, when Behr America acquired Daimler Chrysler Corporation's interest.
 {¶ 3} BDTP is a production location with annual sales of approximately 600 million dollars and nearly 1800 employees. BDTP maintains that salaried non-bargaining unit employees are categorized into six job levels at its plants. Job Level 1 is comprised of entry-level salaried employees and supervisors in operations departments with less than four years supervisory experience. These employees may coordinate the work of other employees. Job Level 2 includes technical, professional, or administrative fully capable individual contributors and supervisors in operations departments with a minimum of four years supervisory experience. Employees at this level may supervise other employees and frequently coordinate other employees' work. Job Level 3 consists of employees who manage functions, processes, relationships or projects affecting the financial situation of the company. It also includes experienced supervisors in operations departments. Job Level 4 is made up of department managers. Job Level 5 includes experts and others responsible for impacting company strategy, profitability and productivity through their management of projects and people. Job Level 6 is comprised of the officers of the company.
 {¶ 4} In a memorandum dated July 19, 2002, BDTP proposed a new policy affecting non-bargaining employees' overtime. Under this policy, first line operations, maintenance and material control supervisors of direct and indirect hourly employees would be eligible for straight-time overtime for hours worked in a work week over 45 hours. The result was the elimination of overtime payments for all non-bargaining unit employees except Job Level 2 supervisors associated with operations. The proposal also indicated that other employees not under the new policy but who were eligible for overtime would be evaluated according to the percent of gross compensation that employee's overtime had represented quarter by quarter since January 1, 2001, the external market rates of similar positions, internal equity within Behr America, Inc., the likelihood of continuing overtime earnings, and individual performance. The effective date of this new policy was October 1, 2002. On June 30, 2003, BDTP indicated that it would pay Job Level 2 supervisors associated with operations straight time instead of overtime beginning July 1, 2003.
 {¶ 5} In a memorandum dated November 13, 2003, members of the Dayton Management Meeting evaluating the payment of supervisor overtime agreed to eliminate overtime for Job Levels 2 and 3.
 {¶ 6} On April 12, 2004, BDTP eliminated overtime pay for all supervisors. According to the director of Human Resources, Gary Stephenson, BDTP decided to "roll-in" a portion of the supervisors' previous overtime earnings into their base salary, a practice Stephenson asserted was more in line with industry standards.
 {¶ 7} Appellants are Mr. Haas, a Maintenance Supervisor employed by Behr since 1995, Mr. Cromer, an Area Supervisor employed by Behr since 1984, and Mr. Shock, a Production Supervisor employed by Behr since 1986. They brought this action on January 27, 2005, on behalf of "all persons who were employed by Behr in the positions of Area Supervisor, Maintenance Supervisor, and Production Supervisor at any time from October 1, 2002 to the present." (Compl. at ?16.) On the merits, they claimed that BDTP violated the Fair Labor Standards Act ("FLSA"), as it applies through R.C. 4111.03, when it eliminated overtime pay beginning on October 1, 2002 to the present.
 {¶ 8} R.C. 4111.03 states that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the `Fair Labor Standards Act of 1938,'52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended." Section 13 of the FLSA provides an exemption from the minimum wage and overtime requirements for employees "employed in a bona fide executive, administrative, or professional capacity."
 {¶ 9} Appellants moved for class certification pursuant to Civ.R. 23(A), (B)(1)(a), (B)(1)(b), (B)(2), and (B)(3) on April 29, 2005, at which time they moved to amend their Complaint in order to redefine the class sought for certification to include "all persons employed by Behr Dayton Thermal Products LLC as non bargaining unit (NBU) employees at any time during the period October 1, 2002 to present." (Pls.' Mem. in Support of Mot. for Class Certification at 1.) The trial court heard arguments on Appellants' motion to certify the matter as a class action and on Appellants' motion to amend their Complaint. Pursuant to the hearings and the pleadings, the trial court adopted the following definition of the class: "All persons employed by Behr Dayton Thermal Products LLC as non bargaining unit (NBU) employees in Job Levels 1, 2 and 3 at any time during the period October 1, 2002 to the present whose overtime pay was eliminated by Behr." (Decision and Entry at 2.) Approximately 100 to 200 employees are included within this defintion.
 {¶ 10} On March 30, 2006, the trial court issued its decision denying Appellants' request for certification of the proposed class. At the same time, it sustained Appellants' motion to amend their Complaint. Regarding class certification, the trial court found that Appellants failed to meet the typicality requirement of Civ.R. 23(A). According to the court, BDTP's actions eliminating overtime pay for the class representatives gave rise to the same type of claim for the rest of the class. However, the court found that a potential conflict existed between members of the class and the class representatives, which invoked a prohibition on unilateral communication between BDTP and the class representatives as set forth in Hamilton v. Ohio Savings Bank
(1998), 82 Ohio St.3d 67, 694 N.E.2d 442. This ban is effectively intended to prevent the party opposing class certification from coercing potential class members into relinquishing their rights to become members of the class. Id. at 76. The court reasoned that the typicality requirement could not be met because the ban on unilateral communications would prevent BDTP from communicating with much of its management; as a result, BDTP would be unable to obtain testimony and evidence regarding the merits of the Appellants' claim.
 {¶ 11} Furthermore, the trial court found that Appellants failed to meet the requirements of Civ.R. 23(B). At the core of this determination was the finding that each employee position included in the class definition was unique and not dispositive of the interests of the other class members. The trial court believed that the answer to the question of whether each employee was entitled to overtime pay based on the Fair Labor Standards Act's exemption criteria was a prerequisite to deciding whether BDTP unlawfully denied overtime to the whole class. Therefore, under Civ. R. 23(B) (1 ), an adjudication as to the interests of one employee would not be determinative of the interests of another; under 23(B)(2), final injunctive relief for the class as a whole would not be possible to determine; and under 23(B)(3), a common question of law or fact did not predominate over questions affecting individual members.
 {¶ 12} Appellants timely appealed the ruling of the trial court, raising the following assignment of error: "The trial court abused its discretion when it denied Appellants' motion to certify the litigation as a class action."
 {¶ 13} Based upon our review of the record, we conclude that the trial court did not abuse its discretion in denying class certification. The record demonstrates that the trial court incorrectly applied the holding in Hamilton to find that Appellants failed to satisfy the typicality requirement of Civ.R. 23(A). However, the court did not abuse its discretion in refusing to certify the class under any of the provisions of Civ.R. 23(B). Therefore, the judgment of the trial court will be affirmed.
 I {¶ 14} The standard of review for decisions regarding certification of a class action is well established. "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." Hamilton, 82 Ohio St.3d at 70 (citation omitted). Consequently, " `due deference must be given to the trial court's decision because a trial court, which routinely handles case-management problems, is in the best position to analyze the difficulties that can be anticipated in litigation of class actions.'" Adair v. Dayton WaltherCorp. (Feb. 4, 1993), Montgomery App. No. 13429, 1993 WL 26771, at *1, quoting Reynolds v. CSX Transportation, Inc. (1989), 55 Ohio App.3d 19,24, 561 N.E.2d 1047. "However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23."Hamilton, 82 Ohio St.3d at 70.
 {¶ 15} The purpose for an abuse of discretion standard in class certification cases is based on a trial court's "special expertise and familiarity with case-management problems and its inherent power to manage its own docket." Id. As a result, "a finding of abuse of discretion should be made cautiously, particularly where a trial court has denied certification." Carder Buick-Olds Co., Inc. v. Reynolds Reynolds, Inc., 148 Ohio App.3d 635, 2002-Ohio-2912, 775 N.E.2d 531, at ?16.
 II {¶ 16} As an initial matter, we note that Appellants have made an evidentiary objection to the declarations provided in the Stephenson affidavit. Appellants argue that the trial court improperly relied on this affidavit in making its decision to deny class certification because the alleged facts and conclusions therein were not properly authenticated, they were not based on personal knowledge, and they included hearsay not subject to any exceptions. The trial court addressed these issues in its decision and entry overruling Appellants' motion to strike the affidavit. This court has reviewed Appellants' objections and finds that paragraphs 1-8, 12-13, and 17-45 are admissible evidence reasonably based on Mr. Stephenson's position and experience as Director of Human Resources. Thus, Appellants' objections are without merit.
 {¶ 17} In their single assignment of error, Appellants assert that the trial court abused its discretion by denying their motion to certify this matter as a class action. Specifically, Appellants claim that denial of class certification was inappropriate where BDTP had engaged in uniform conduct toward the class, where the burden of demonstrating its employees' exemption status rested on BDTP, and where the class was seeking primarily injunctive and declaratory relief. Furthermore, Appellants claim that the prohibition against communications between defendants and putative class members defined in Hamilton does not prevent class certification.
 {¶ 18} Incorporating Civ.R. 23(A) into its test, the Supreme Court of Ohio has established that the following seven requirements must be satisfied before a matter may be maintained as a class action pursuant to Civ.R. 23: "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met." Hamilton, 82 Ohio St.3d at 71.
 {¶ 19} Civ.R. 23(B) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 {¶ 20} "(1 ) the prosecution of separate actions by or against individual members of the class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 {¶ 21} "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 {¶ 22} "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
 A. Application of Civ.R. 23(A)(3), i.e., Typicality {¶ 23} In finding that the claims of the class representatives are not typical of the claims and defenses of the class under Civ.R. 23(A)(3), the trial court misconstrued the holding in Hamilton v. Ohio SavingsBank (1998), 82 Ohio St.3d 67, 694 N.E.2d 442. There, the Ohio Supreme Court noted that unilateral, unsupervised communications between the defendant bank and class member borrowers encouraged " `exclusion on the basis of a one-sided presentation of the facts,'" relinquishing the rights of potential class members to participate in the class. Id. at 76, quoting Kleiner v. First Natl. Bank of Atlanta (C.A.11, 1985), 751 F.2d 1193, 1202-03. The context for this conclusion was the solicitation of exclusion requests by the defendant in order to deter class participation and defeat Civ.R. 23(A)'s "numerosity" requirement.
 {¶ 24} The ban on unilateral communications attempts to prohibit unsolicited, coercive communications where the class opponent heavy-handedly attempts to dissuade potential class members from participating. In such an event, those who fall victim to the class opponent's scheme should be given the opportunity to join the class and assert their rights. See Hamilton, 82 Ohio St.3d at 77. Should a class be certified, this ban becomes unnecessary to the extent that the trial court will have the authority to monitor class member contacts. A conflict does not arise simply because class members who work together might be requested by the party opposing the class to participate in discovery.
 {¶ 25} Here, the trial court determined that Appellants could not demonstrate the "typicality" requirement of Civ.R. 23(A) because a potential conflict between members of the class and class representatives existed. According to the court, BDTP's need to communicate with its management staff, who are also employees included within the class definition, could result in class members being intimidated by BDTP. The court further noted that a ban on communication would prevent BDTP from effectively obtaining and presenting the evidence necessary to establish its position as to the merits of Appellants' claim because many potential class members are BDTP management. BDTP attempted to explain the potential class conflict by stating that within the job levels, an upper-level manager or supervisor class member trying to demonstrate his or her claim of non-exempt status in order to recover overtime compensation would find it difficult to endorse the job responsibilities characterized by a subordinate employee, also within the class and also seeking non-exempt status, without attributing greater responsibilities to himself or herself. We find this argument lacks merit and believe the trial court incorrectly incorporated the unilateral communications ban into the context of "typicality."
 {¶ 26} Instead, "typicality" is met where a party representative's claim " `arises from the same events or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" Baughman v. State Farm Mut.Auto. Ins. Co. (2000), 88 Ohio St.3d 480, 485, 727 N.E.2d 1265, quoting 1 Newberg on Class Actions (3 Ed.1992) 3-74 to 3-77, Section 3.13. Here, the claim by the party representatives that BDTP unlawfully eliminated overtime compensation to them is typical of the claims of the rest of the class. Therefore, the trial court's finding that Appellants failed the "typicality" requirement pursuant to Civ.R. 23(A)(3) is an abuse of discretion. This determination, however, does not preclude us from affirming the trial court's decision because Appellants must also show that the trial court abused its discretion in denying class certification under Civ.R. 23(B). For the following reasons, we find that Appellants failed to make this showing.
 B. Application of Civ.R. 23(B)(3) {¶ 27} Appellants argue that the trial court abused its discretion in failing to find that they satisfied the predominance and superiority requirements of Civ.R. 23(B)(3). In order for plaintiffs to demonstrate that questions of law or fact common to the class predominate over questions affecting individual members, "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members in a single adjudication." Schmidt v. AvcoCorp. (1984), 15 Ohio St.3d 310, 313, 473 N.E.2d 822. See, also,Adair v. Dayton Walther Corp. (Feb. 4, 1993), Montgomery App. No. 13429,1993 WL 26771, at *2. Moreover, "[p]erforming a `rigorous analysis' of the Civ.R. 23(B)(3) predominance requirement necessitates an examination of `common' versus `individual' issues. A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy." Hoang v. E*Trade Group, Inc.,151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151, at]}16 (citation omitted).
 {¶ 28} In Hoang, the court of appeals reversed the trial court's finding that the predominance requisite of Civ.R. 23(B)(3) was satisfied where the defendant had been engaged in a "common course of conduct" that negatively impacted each plaintiff within the proposed class. Id. at ]}18, 28. There, the plaintiff, a subscriber to the defendant's online investing service, brought a class action on behalf of all Ohio residents who had a trading account with the defendant for damages caused by service interruptions. Id. at ¶ 8. The plaintiff alleged that she and the other customers were damaged by these interruptions because they were prevented from executing transactions and transactions were delayed. Id.
 {¶ 29} The trial court found a common class question predominated because each plaintiff within the class asserted the same claim: the defendant had engaged in a common course of conduct that negatively impacted its existing customers. Id. at ]}18. The Eighth District, however, reversed the trial court's certification of a class on the grounds that the plaintiffs' claims required proof of actual damages for each customer before liability could be established. Id. at ]}28.
 {¶ 30} According to the court of appeals, the trial court inappropriately applied the requirements for finding commonality under Civ.R. 23(A) instead of the predominance requirement under Civ.R. 23(B). Id. at]}19. Although the court agreed that each plaintiffs claim arose out of a "common course of conduct," it also noted that the trial court should have recognized that each individual claim could not be settled in a single adjudication. Id. More specifically, "[e]ach of the plaintiffs claims require[d] proof of actual injury caused by the alleged wrongdoing before liability [could] be established." Id. (citations omitted). Therefore, class certification was inappropriate.
 {¶ 31} In the present case, the trial court was careful to distinguish between the "commonality" requirement of Civ.R. 23(A) and the issue of "predominance" under Civ.R. 23(B)(3). In finding that a question of law or fact common to the class existed under Civ.R. 23(A), i.e., whether BDTP failed to pay overtime wages to its non-exempt plaintiff workers beginning in October 2002, the trial court noted that the "issue of whether there are any additional questions affecting only the individual class members does not enter the class certification analysis until the Civ.R. 23(B)(3) requirement of predominance and superiority is applied." (Decision and Entry at 4, quoting Hamilton, 82 Ohio St.3d at 73.) At this stage in its analysis, the trial court recognized that the mere existence of this common question, whose determination would depend on the exempt or non-exempt status of proposed class members, was sufficient to satisfy commonality under Civ.R. 23(A)(2). However, in determining under Civ.R. 23(B)(3) whether questions of law or fact common to the class predominated over those affecting only individual members, it was imperative that the trial court look beyond the "common course of conduct" and rigorously examine "common" versus "individual" issues. We find that the trial court fulfilled this responsibility.
 {¶ 32} Appellants argue that evidence of Behr's and BDTP's class-wide conduct makes this matter appropriate for class certification. Specifically, Appellants assert that Behr has used class-wide conduct in classifying its employees into six job levels based upon similar duties. Appellants claim that Behr has distinguished NBU employees in Job Levels 1 through 3, which are the subject of the present matter per the proposed class definition, from the managerial, exempt employees making up Job Levels 4 through 6. Furthermore, Appellants point out that the NBU employees in Job Levels 1 through 3 had historically been paid hourly wages and overtime, and that Behr had been engaged in the practice of docking these employees' pay for missing a fraction of a workday. The practice of docking pay, according to Appellants, demonstrates that Behr treated these employees as hourly, rather than salaried. Therefore, because salaried employees lose their exempt status when a company subjects them to pay reductions for partial-day absences, Appellants argue that Behr's policy uniformly establishes that its employees in Job Levels 1 through 3 had been and should be considered nonexempt under the FLSA and R.C. 4111.03. Appellants finally contend that BDTP's eliminating overtime for all NBU employees in Job Levels 1 through 3 without consideration of individual job responsibilities supports a finding that class-wide conduct makes class certification appropriate.
 {¶ 33} In opposing class certification, BDTP argues that simply employing uniform classifications based on job levels and titles has little effect on whether an exemption applies pursuant to the FLSA and R.C. 4111.03. Exemption status, instead, is determined by the employee's salary and duties in light of FLSA requirements. According to BDTP, the evidence reveals that approximately 80 job classifications would be covered by the proposed class definition. Evidence also indicates that together these job classifications cover between 100 and 200 employees. Because the parties disagree as to the exemption status of the covered employees, BDTP claims that the individual job responsibilities of each employee under each classification would have to be examined in order to determine whether that employee satisfies the requirements of FLSA exemption. Furthermore, BDTP disagrees with Appellants' argument that employees within the defined class had previously received overtime wages. BDTP asserts, instead, that these employees received additional compensation, not overtime pay per se, to their weekly guaranteed salary amounts as permitted by the FLSA, and that such compensation did not destroy exempt status. BDTP draws the court's attention to Section 541.604(a), Title 29, C.F.R., which states that "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." Regarding Appellants' claim that docking pay is evidence that these employees were considered nonexempt, BDTP maintains that employers may reduce the pay of salaried, exempt employees for partial-day absences without affecting the employees' exempt status if the absences meet certain qualifications under the Family and Medical Leave Act.
 {¶ 34} The trial court correctly found that these arguments and supporting evidence demonstrated the existence of a question of law or fact common to the class under Civ.R. 23(A). The court also correctly determined, however, that this alone would not satisfy the requirements of Civ.R. 23(B)(3) without examining the impact of the underlying question on individual class members. The underlying question is whether the NBU employees in Job Levels 1 through 3 are entitled to overtime based on the Fair Labor Standards Act exemption criteria.
 {¶ 35} Appellants argue that Sav-on Drug Stores, Inc. v. SuperiorCourtCal. (2004), 34 Cal.4th 319, 96 P.3d 194, stands for the proposition that class certification is appropriate even where a trial court must determine if individual employees are exempt or nonexempt before concluding that the employees are eligible to recover unpaid overtime wages. In Sav-on Drug Stores Inc., the Supreme Court of California affirmed the trial court's certification of a class, where operating managers and assistant managers of the defendant employer claimed that they had been uniformly misclassified as exempt employees, that they actually performed nonexempt, non-managerial tasks pursuant to the defendant's standardized store operations, and that they were wrongfully refused overtime compensation under California law. Giving the appropriate deference to the trial court's finding, the court noted that " `[w]here a certification order turns on inferences to be drawn from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" Id. at 328 (citation omitted). Accordingly, the court held that the trial court had not abused its discretion in finding that the common issue of whether each task engaged in by the two categories of class members should be classified as exempt or nonexempt predominated over any individual questions pertaining to each class member's eligibility for recovery. Id. at 330, 332-33.
 {¶ 36} The present matter is distinguishable from the situation inSav-on Drug Stores, Inc. in several respects. First, we must give due deference to the trial court's finding that class certification is not appropriate here, unless we find that the trial court's determination was unreasonable, arbitrary or unconscionable. The California Supreme Court, also, noted that it lacked the authority to substitute its own judgment for the trial court's discretion to credit the plaintiffs' evidence over points in contention with the defendant's evidence. Id. at 331. Here, Appellants and BDTP presented substantial evidence in the form of deposition testimony, affidavits, and exhibits, upon which the trial court relied in making its decision. For example, this evidence revealed issues concerning the historical treatment of "voluntary overtime pay" for exempt employees by Chrysler, See Barnes Dep. at 50-51, 139, 141; Shock Dep. at 28-31; the docking of employees' pay for missing a fraction of the workday, See Ratti Dep. at 35-39; Cromer Dep. at 174-75; Shock Dep. at 236-37; the ability of the class representatives to impose disciplinary action upon subordinate employees, See Cromer Dep. at 257-62; Shock Dep. at 116-25, 137, 198; and the ability of supervisors in Job Levels 2-4 to make decisions regarding the promotions of hourly people, See Barnes Dep. at 237, 240-41. Under an abuse of discretion standard, it is not our role to reverse the decision of the trial court because it reached a conclusion contrary to what we might have, based upon reasonable inferences drawn from the evidence. The trial court is in the best position to anticipate the effect that litigating this matter as a class action will have on case management, and, therefore, we must defer to its conclusions that the individual issue of whether each BDTP employee was entitled to overtime pay based on the FLSA's exemption criteria predominates over any common questions.
 {¶ 37} Next, the plaintiffs in Sav-on Drug Stores, Inc. were comprised of only two job titles, Operating Managers and Assistant Managers. The trial court found that their job duties were so similar in nature that it was possible to determine whether the tasks and responsibilities performed under these titles were managerial or non-managerial on a class-wide basis without impacting judicial efficiency. Id. at 331. The California Supreme Court agreed, acknowledging the trial court's reliance on evidence demonstrating the standardized operations of the defendant's stores and the class-wide policies managing its employees. Id. at 332.
 {¶ 38} Here, the record demonstrates that the trial court could have reasonably relied on the affidavit of BDTP Human Resources Director, Gary Stephenson, along with the deposition testimony of the party representatives and the Director of Compensation Benefits and Human Resources Information Systems, to conclude that the proposed class of 100 to 200 employees working under 80 or more job titles and performing numerous, varied job responsibilities made determining whether each employee was entitled to overtime pay a prerequisite to whether each employee had been unlawfully denied overtime pay. The core of this determination is not simply what tasks should be classified as exempt or nonexempt, but what tasks are performed by which employees and how much time is spent on the various tasks. See Jimenez v. Domino's Pizza,Inc. (CD. Cal.2006), 238 F.R.D. 241, 251 (distinguished from Sav-on DrugStores, Inc. on the grounds that the predominating issue was not whether identical tasks performed by class members could be categorized as exempt or nonexempt, but rather how much time each class member actually spent performing the various tasks, an issue requiring individual analyses); Morisky v. Public Serv. Elec. Gas Co. (N.J. 2000), 111 F.Supp.2d 493 (finding that class members' claim that they were improperly classified as exempt employees requires a fact-specific analysis of each employee's job responsibilities.) We find that the trial court did not abuse its discretion in finding that the question affecting only individual members did not predominate over the question of law or fact common to the members of the class. The record demonstrates that the varied tasks performed by the multiple employees included under the class definition make it necessary for the trial court to individually assess whether each employee is eligible to recover the eliminated overtime compensation before determining whether the employees as a whole were unlawfully refused overtime pay by BDTP. Resolving this issue will certainly require more than a single adjudication.
 {¶ 39} In conjunction with the predominance argument, the trial court also found that a class action was not "superior to other available methods for the fair and efficient adjudication of the controversy." Specifically, the trial court applied Civ.R. 23(B)(3)(d) to find that there would likely be difficulties in the management of the class action. According to the court, these difficulties would arise from the need for a separate trial or hearing concerning the responsibilities of each class member under the appropriate job title and whether that class member's status was actually exempt or nonexempt under the FLSA and R.C.4111.03.
 {¶ 40} Again, we do not find that the trial court abused its discretion in making this determination. "[A] class action must be superior to all other available methods for adjudication of the controversy and one of the tests of superiority is the manageability of the action." Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310, 315,473 N.E.2d 822. Here, the trial court concluded that multiple individual adjudications were necessary to identify class members who were eligible to recover before addressing the common claim of whether BDTP unlawfully denied the class overtime compensation. In assessing superiority, the court found this was not an appropriate circumstance for administrative hearings or placing the class members into sub-classes because the underlying question was not at what level were they entitled to recovery, but whether the class members were even eligible for recovery. We agree with the trial court.
 {¶ 41} The burden of individually adjudicating the job responsibilities of each class member to determine whether that employee is exempt or nonexempt would cause this matter to be unmanageable as a class action. The evidence presented before the court as to each claim would not be identical, as argued by Appellants. Instead, the evidence would be unique to each employee according to his or her job title as it demonstrates or fails to demonstrate whether that employee's duties and responsibilities satisfy the exemption requirements of the FLSA and R.C.4111.03. Thus, the trial court did not abuse its discretion in finding that Appellants failed to demonstrate that a class action is the superior means of litigating this controversy.
 {¶ 42} For the foregoing reasons, we find that class certification is not appropriate under Civ.R. 23(B)(3).
 C. Application of Civ.R. 23(B)(2) {¶ 43} Appellants next assert that the trial court abused its discretion in denying class certification when the class is seeking injunctive and declaratory relief related to the elimination of overtime pay together with money damages. For purposes of Civ.R. 23(B)(2), a class action is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." An implicit requirement of Civ.R. 23(B)(2) class certification is that the class be cohesive. See Wilson v. Brush Wellman, Inc., 103 Ohio St.3d 538,2004-Ohio-5847, 817 N.E.2d 59. Cohesiveness is likened to the requirement in Civ.R.23(B)(3) that the common questions affecting the entire class predominate over issues concerning only individual members. "In its `cohesiveness' analysis, the majority essentially (and appropriately) engrafts Civ.R. 23(B)(3)'s predominance requirement onto class actions for injunctive relief under division (B)(2). Although division (B)(2), unlike division (B)(3), contains no specific requirement that `questions of law or fact common to the members of the class predominate over any questions affecting only individual members,' it does require that a proposed class have sufficient unity so that final injunctive relief is appropriate `with respect to the class as a whole.'" Id. at 547 (Resnick, J. dissenting).
 {¶ 44} The trial court in the present action addressed cohesiveness without explicitly referring to it in finding that it was impossible to determine whether BDTP had "refused to act on grounds generally applicable to the class." According to the trial court, being unable to conclude that each potential class member was nonexempt, and, therefore, impacted by BDTP's elimination of overtime pay to all NBU employees in Job Levels 1 through 3, prevented the court from finding that injunctive relief would redress the injury to the class as a whole. We agree. Where individual issues predominate over any questions of law or fact common to the class under Civ.R. 23(B)(3), these same issues will likely make it impossible for a court to find that the party opposing class certification has acted on grounds generally applicable to the whole class. In the present case, the class definition includes employees whose claims against BDTP may become moot if individual adjudications determine that they are actually exempt employees, and were lawfully refused overtime pay. These employees destroy the cohesiveness of the class. A determination that injunctive or declaratory relief is appropriate to the class as a whole would effectively force BDTP to reverse its policy and pay overtime to exempt employees, where under the law it is not required to do so. Thus, we find that the trial court did not abuse its discretion in concluding that Appellants failed to satisfy the requirements of Civ. R. 23(B)(2).
 D. Application of Civ.R. 23(B)(1)(a) and (B)(1)(b) {¶ 45} Although Appellants' brief did not address the trial court's denial of class certification under (B) (1 )(a) or (B) (1 )(b), this issue was raised in oral arguments. A class will be certified under Civ.R. 23(B)(1)(a) only " `when the evidence proves that separate actions could lead to incompatible standards of conduct.'" Hall v. Jack Walker PontiacToyota, Inc. (2000), 143 Ohio App.3d 678, 685, 758 N.E.2d 1151, quotingWarner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 95,521 N.E.2d 1091. "Thus, merely demonstrating that there is a risk of inconsistent or varying adjudication is insufficient as one must show that the defendant will have to adhere to differing standards of conduct." Id. (citation omitted.)
 {¶ 46} Here, the trial court found that uniqueness in the potential class members' positions/job descriptions would yield consistent adjudications in which the court is required to determine whether each employee is exempt under the FLSA. As in Hall, the only variance here would be based on the individual facts of each employee. SeeHall, 143 Ohio App.3d at 685. Prosecution of the separate actions would not result in incompatible standards of conduct for BDTP. Therefore, we find no abuse of discretion by the trial court in this determination.
 {¶ 47} Similarly, the trial court did not abuse its discretion in finding that class certification was not appropriate under Civ.R. 23(B) (1 )(b). For purposes of this provision, a matter may be maintained as a class action where the prosecution of separate claims by individual class members would impair the interests of other parties. "This category has been interpreted as a means to protect later litigants who may be deprived of recovery because of the success of earlier litigants." 1 Klein Darling, Civil Practice (2 Ed.2004) 1072, Section 23:7. See, also, Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91,521 N.E.2d 1091.
 {¶ 48} In the present matter, the trial court found "the claim of one Job Level 1-3 employee would necessarily be limited to that employee and would not be dispositive of the interests of similarly situated employees. (Decision and Entry at 8.) We agree. There was no evidence presented demonstrating BDTP's limited ability to provide recovery should the class members pursue individual claims, nor was there other evidence indicating how these individual claims would impair the interests of employees not participating in the class at this time. The prosecution of separate actions would only be dispositive of each individual employee's claim. We find no abuse of discretion in the trial court's refusal to certify the class under Civ.R. 23(B)(1)(b).
 {¶ 49} Based on the foregoing discussion, Appellants' assignment of error is overruled. We find that the trial court did not abuse its discretion in denying class certification in this matter because Appellants failed to satisfy any of the requirements under Civ.R. 23(B). The trial court's judgment is affirmed.
WOLFF, P.J., and Donovan, J., concur.