Filed 7/18/14  Flores v. Superior Court CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LIBERTAD FLORES et al., | B245897 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC441766) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent | |
| POLLY'S PIES, INC., | |
| Real Party In Interest. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa Sanchez-Gordon, Judge.  Appeal deemed to be a petition for writ of mandate. Petition denied.

Rastegar & Matern, A.P.C. and Douglas W. Perlman for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton LLP, Richard J. Simmons, Jason W. Kearnaghan, and Cassidy M. English for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiffs Libertad Flores and Amanda Mignosi (Plaintiffs) brought a putative class action against their former employer, defendant Polly's Pies, Inc. (Defendant), for alleged meal and rest period violations under the Labor Code.[1]  The trial court denied Plaintiffs' motion for class certification and granted Defendant's motion to strike the class allegations, finding the proposed subclasses lacked the requisite community of interest.  The record supports the trial court's finding.  Accordingly, we affirm.[2]

## FACTS AND PROCEDURAL BACKGROUND

1.    *The Complaint and Competing Class Certification Motions*

Plaintiffs' complaint asserts seven causes of action for (1) failure to provide meal breaks (§ 226.7 and Wage Order No. 5)[3]; (2) failure to provide rest breaks (§ 226.7 and

---

[1]    Statutory references are to the Labor Code, unless otherwise designated.

[2]    Defendant argues this appeal should be dismissed as premature, having been taken from an interlocutory order rather than a final judgment.  Though the challenged order denied class certification and struck all class allegations with prejudice, Defendant contends the death knell exception to the one final judgment rule does not apply because Plaintiffs continue to pursue a representative claim for civil penalties under section 2698 et seq., known as the Labor Code Private Attorneys General Act of 2004 (PAGA).  The death knell exception is a "tightly defined and narrow concept" (*Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547), predicated on the assumption that " 'without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment and then seek appellate review of an adverse class determination.' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 758.)  Defendant argues Plaintiffs have adequate incentive to pursue the litigation to final judgment because the challenged order does not limit Plaintiffs' prospect of recovering civil penalties "on behalf of [themselves] and other current and former employees" under PAGA.  (§ 2699.)  Though we agree Plaintiffs' continued pursuit of a PAGA claim removes this case from the narrow contours of the death knell doctrine, in the interest of judicial economy, we will exercise our discretion to treat this appeal as a writ petition and resolve the claim of error on the merits.  (See *Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 92.)

[3]    "State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018 (*Brinker*); see §§ 226.7, 512; Industrial Welfare Commission (IWC) wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050), hereafter

Wage Order No. 5)[4]; (3) failure to pay wages due (§ 204); (4) failure to pay wages due upon termination (§§ 201-203); (5) failure to provide accurate earnings statements (§§ 226 and 1174); (6) civil penalties pursuant to PAGA (§ 2698 et seq.); and (7) unlawful business practices (Bus. & Prof. Code, § 17200).

Defendant moved to deny class certification and strike the class allegations with respect to all causes of action. The same day, Plaintiffs filed a competing motion to certify the following three subclasses with respect to only their meal and rest period claims:

(1)     The rest break subclass, consisting of "[a]ll non-exempt hourly restaurant employees of [Defendant] who . . . worked one or more shifts of 3 and $^1/_2$ hours or more in duration."

(2)     The meal period subclass, consisting of "[a]ll non-exempt hourly restaurant employees of [Defendant] who . . . worked one or more shifts in which a meal period was taken after the fifth hour of work."

(3)     The former employee subclass, consisting of "[a]ll former employees of [Defendant] who are members of either [the Rest Break Subclass] and/or [Meal Period Subclass]."

---

Wage Order No. 5.)  With respect to meal periods, subdivision 11(A) of Wage Order No. 5 states, in pertinent part:  "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee."  In *Brinker*, the Supreme Court clarified that, "absent waiver," the law "requires a first meal period no later than the end of an employee's fifth hour of work." (*Brinker,* at p. 1041.)

[4]     With respect to rest periods, subdivision 12(A) of Wage Order No. 5 states, in pertinent part:  "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." (Cal. Code Regs., tit. 8, § 11050.)

2.     *Defendant's Written Policies Regarding Meal and Rest Periods* [5]

Defendant operates 14 restaurants in California.  During the proposed class period, Defendant employed more than 1,600 current and former employees.

Upon hire, Defendant provides each employee with its Team Member Handbook, which sets forth Defendant's policies regarding meal and rest periods.  Additionally, Defendant routinely distributes and posts reminders regarding its meal and rest period policies at its restaurants.

Defendant's written policy requires hourly employees to take a duty-free meal period of no less than 30 minutes whenever an employee works more than five hours in a day, and two uninterrupted 30-minute meal periods for shifts longer than 10 hours.  Per Defendant's policy, employees are to begin their meal periods within the first five hours of their shifts.

Defendant's written policy also dictates that employees are to receive a paid 10-minute break for shifts between three-and-a-half hours and five hours in length.  Two 10-minute breaks are given for shifts of eight hours or more.

3.     *Scheduling Practices Concerning Meal and Rest Periods at Defendant's Various Restaurant Locations*

Each of Defendant's 14 California restaurants is tailored to the market it serves. The restaurants vary in physical size, hours of operation, staffing levels and business volume, all of which impact the length of work shifts and the number of part-time versus full-time workers Defendant employs at a particular restaurant.

Each restaurant is managed day-to-day by a general manager who is not an hourly employee.  Individual managers coordinate meal and rest breaks in differing ways to accommodate the particular needs of the restaurant and employees.  In some restaurants, managers verbally inform employees when to take their meal and rest periods.  In others,

---

[5]     The following facts are drawn from the evidence submitted in support of the parties' competing class certification motions and respective opposition briefs.  In accordance with the applicable standard of review, we state the facts in the light most favorable to the trial court's findings.  (See *Brinker, supra,* 53 Cal.4th at p. 1022.)

employees' shifts are staggered and breaks are taken in the order employees arrive to work. In other restaurants, employees have a general expectation of the busy or "rush" periods on a given day, and are permitted to self-manage their meal and rest breaks to accommodate the rushes.

During busy times, managers also utilize different scheduling and staffing methods to allow employees to take their meal and rest breaks. For instance, some managers schedule multiple servers at the same time to ensure an extra server is available to cover tables when another server takes a break. At other restaurants, schedules overlap, or managers and support mangers step in to cover the restaurant floor during meal and rest periods. The circumstances are different for bakers and other "behind-the-scenes" employees. Because these employees do not interact directly with customers, they are not always required to coordinate their meal and rest periods with co-workers.

Both Plaintiffs worked exclusively in Defendant's Torrance, California restaurant. Flores worked as a hostess and cashier from approximately February 2009 to April 2010. Mignosi worked as a server from February 2009 to October 2009, then for another brief stint from January 2010 to February 2010. In their declarations submitted in support of class certification, each Plaintiff testified that she "observed nothing that would lead me to believe that [Defendant] had an actual policy whereby employees were authorized and permitted to take 10 minute rest breaks." Mignosi asserted she "specifically requested a 10 minute rest break on approximately 6 or 7 separate occasions, [but] was never provided with 10 minute rest breaks." Flores said she asked her manager about 10-minute rest breaks and was told " 'We don't do that here.' "

With respect to meal breaks, both Plaintiffs acknowledged that Defendant required employees to take a 30-minute meal break. However, they testified the breaks "often happened . . . after [they] had completed 5 hours of work." Both Plaintiffs stated employees at the Torrance restaurant "could not decide when to take their 30 minute meal periods," and that scheduling decisions were "consistently made by managers and supervisors depending upon customer traffic and the availability of other employees to cover meal periods."

In addition, Plaintiffs submitted declarations by seven other current and former employees, who collectively worked at four of Defendant's other restaurant locations. All seven declarants testified, in largely identical terms, that they "observed nothing" that led them to believe Defendant had an "actual policy" authorizing employees to take 10-minute rest breaks. All seven declarants also testified that "the majority of the time" their meal break occurred after they had completed five hours of work.

In contrast, Defendant submitted declarations by over 50 current employees, from each of Defendant's 14 restaurant locations, all of whom affirmed they received rest and meal breaks in accordance with Defendant's written policy. These employees also described the different scheduling and staffing methods used by managers in the various restaurants to implement Defendant's meal and rest period policies.

4.      *The Trial Court's Ruling*

The trial court denied Plaintiffs' motion for class certification, and granted Defendant's motion to strike the complaint's class allegations. With respect to the rest period claim, the court concluded the proposed subclass lacked the requisite community of interest because the evidence failed to establish a "class-wide policy [of] denying all rest breaks." In support of its finding, the court cited evidence showing "managers are in charge of providing rest breaks to the employees" and "the manner in which they do so is not controlled by Defendant." Though Plaintiffs offered declarations from a handful of putative class members who stated they never received rest breaks, the court determined these were "not convincing evidence of a practice applied . . . [on] a class-wide basis," given the size of the putative class and the fact that the declarants worked at only five of Defendant's 14 restaurants. The court also criticized the "vague and boilerplate" nature of Plaintiff's supporting declarations, noting that "[n]one of the declarants identif[ied] relevant factors, such as their managers or . . . how many managers worked at the location." Thus, the court concluded "Plaintiffs have not demonstrated that common questions predominate [with respect to] the rest break claim."

Likewise, the trial court determined the proposed meal break subclass lacked the requisite community of interest. As with the rest period claim, the court cited evidence

showing that "Defendant does not control the manner in which managers provide meal breaks to class members," including evidence that "at some locations [employees] are allowed to self-manage their meal break." Though Plaintiffs' supporting declarations indicated that "meal breaks were sometimes not provided within the first five hours of the [employee's] shift," the court found the evidence as a whole showed "the manner in which meal breaks are scheduled appears to vary from store to store." Thus, the court concluded, "liability for the untimely meal breaks cannot be determined without . . . questioning each class member about the circumstances around that particular meal break; therefore, individual questions also predominate the meal break claim."

**DISCUSSION**

1.      *Class Certification Principles*

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).) As " 'trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*Id.* at p. 326.) Thus, "in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436.)

Here, the trial court determined each proposed subclass lacked the requisite community of interest because Plaintiffs failed to establish predominant common questions of fact. "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]

The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' " (*Brinker, supra,* 53 Cal.4th at p. 1021.) Thus, "[p]resented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Id.* at p. 1025.)

Though the trial court's ultimate ruling on the question of class certification is reviewed for abuse of discretion (*Brinker, supra,* 53 Cal.4th at p. 1017), "[p]redominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence." (*Id.* at p. 1022.) Under both standards, "[w]e must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' " (*Ibid.*)

2.      *The Rest Period Claim*

Consistent with the Supreme Court's directive, we begin by examining the theory of recovery for Plaintiffs' rest period claim. (See *Brinker, supra,* 53 Cal.4th at pp. 1021, 1025.) Though Plaintiffs acknowledge Defendant's employee handbook sets forth a legally compliant rest period policy, they allege this written policy "is in fact a sham" and that the "actual policy applied to [Plaintiffs] and their co-workers was that rest breaks were simply not allowed at all, period." The trial court found this theory of recovery was not amenable to class treatment, because Plaintiffs failed to present "convincing evidence of a practice applied . . . [on] a class-wide basis." We agree with the court's assessment, and conclude its finding is supported by the record.

The parties' competing declarations concerning the varying practices employed by individual managers to implement Defendant's rest period policy plainly support the trial court's finding. While Plaintiffs presented a handful of declarations suggesting that rest periods are never provided in five of Defendant's 14 restaurant locations, Defendant presented competing declarations by several more employees, from each of Defendant's 14 restaurants, stating rest periods are allowed, though managers exercise varying degrees of control over the timing of rest periods to accommodate the particular needs of

each restaurant.  These declarations describe varying experiences among Defendant's employees, depending largely upon the restaurant where an employee worked and the manager in charge of the employee's shift.  Taken together, this evidence supports the trial court's finding that management's implementation of Defendant's written rest period policy "likely varies from store to store and person to person."

On appeal, Plaintiffs largely ignore the foregoing evidence, focusing instead on certain statements made by the trial court concerning shortcomings in Plaintiffs' evidentiary presentation.  In delivering its ruling, the court emphasized that Plaintiffs' "declarations fail[ed] to provide evidence from the majority of locations where the class members worked" and "[n]one of the declarants identif[ied] relevant factors, such as their managers or provide[d] relevant details, such as how many mangers worked at the location."  The court concluded this "lack of specificity and boilerplate nature robs the declarations of persuasive force."  Based on these statements, Plaintiffs argue the trial court abused its discretion by "discount[ing] the credibility of [Plaintiffs'] evidence" and "improperly rul[ing] on the merits of the action rather than focusing on [Plaintiffs'] theory of recovery."  We disagree.

Far from an abuse of discretion, judging the credibility of evidence submitted in support of and opposition to a class certification motion is among the trial court's core functions.  As explained in *Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 991 (*Dailey*), "if the parties' evidence is conflicting on the issue of whether common or individual questions predominate (as it often is and as it was here), the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met—and doing so is not . . . an improper evaluation of the merits of the case."  (See also *Sav-On, supra,* 34 Cal.4th at p. 331 ["the trial court was within its discretion to credit plaintiffs' evidence [of class-wide employee misclassification] over defendant's," and this was not an improper ruling on the merits of plaintiff's case].)

More importantly, the shortcomings identified by the trial court bear directly upon Plaintiffs' burden to present *evidence* establishing that their theory of recovery is subject

to predominantly common factual questions. (See *Brinker, supra,* 53 Cal.4th at p. 1021.) To obtain class certification, Plaintiffs were required to present evidence of a common rest period practice affecting all members of the putative subclass. In view of this burden, the trial court properly considered Plaintiffs' failure to present any evidence concerning the rest period practices employed in the majority of Defendant's 14 restaurants. Likewise, in view of Defendant's evidence suggesting that rest period practices varied from restaurant to restaurant and manager to manager, the trial court understandably criticized Plaintiffs' failure to identify or provide specific details about any of their declarants' individual managers. All told, the trial court properly weighed the parties' competing evidence and determined Plaintiffs failed to establish the existence of a uniform class-wide rest period practice. The ruling is supported by substantial evidence.

     3.     *The Meal Period Claim*

Plaintiffs acknowledge that Defendant requires its employees to take a 30-minute meal break for shifts of more than five hours. They nevertheless contend meal periods "often happened . . . after [employees] had completed 5 hours of work," in violation of section 226.7 and Wage Order No. 5, subdivision 11(A). (See fn. 3, *ante*.) The trial court determined this theory of recovery was not amenable to class-wide proof, based in part on Plaintiffs' own supporting declarations, which indicated "managers and supervisors dictated when meal breaks were taken by considering . . . customer traffic and the availability of other employees to cover the meal break." The court also cited evidence that employees "at some locations" were allowed to "self-manage their meal break." Based on this evidence, the court found "the manner in which meal breaks are scheduled appears to vary from store to store," such that "liability for the untimely meal breaks cannot be determined without . . . questioning each class member about the circumstances around [a] particular meal break."

Plaintiffs do not challenge the trial court's findings regarding the variation among Defendant's numerous restaurants and individual managers concerning the scheduling of meal periods. Instead, Plaintiffs contend the trial court erred by "disregard[ing]

[Defendant's] affirmative obligation to relieve employees of all duty." In that regard, Plaintiffs argue "the practice of employee 'self management' of meal periods is clearly non-compliant" and "[t]he lack of an actual policy on how [Defendant's] purported meal period policy should be employed at the restaurant locations should be convincing evidence in support of certification." We disagree.

Plaintiffs' argument confuses what is essentially a merits issue for evidence of commonality. Evidence that Defendant allows its managers and, in some instances, its employees to decide when meal periods are scheduled may support an inference that an individual employee was denied a timely meal period on a particular occasion, notwithstanding Defendant's legally compliant written policy. However, this lack of a uniform practice is exactly what makes Plaintiffs' meal period claim inappropriate for class treatment.[6] (See *Dailey, supra,* 214 Cal.App.4th at p. 1002 [absence of "a uniform policy or widespread practice of either depriving . . . employees of meal and rest periods or requiring them to work during those periods," supported denial of class certification].)

At best, Plaintiffs' evidence suggests that on some occasions, some employees, from less than half of Defendant's restaurants, took a late meal period, due in part to Defendant's failure to uniformly implement its legally compliant written policy. While this evidence may support a claim of liability on such an occasion, it cannot supply proof of liability on a class-wide basis. (See *Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1463 [proof of liability as to the named plaintiffs "must supply the proof as to all members of the class"].) The trial court did not abuse its discretion in denying class certification.

---

[6]     To the extent Plaintiffs contend Defendant's lack of a written policy concerning the timing of meal breaks establishes class-wide liability, we also reject this contention. The absence of a formal written policy does not necessarily imply a uniform practice of denying timely meal breaks. (See *Dailey, supra,* 214 Cal.App.4th at p. 1002.) Indeed, the employee declarations submitted by Defendant support the opposite inference—that Defendant provides its employees the opportunity to take timely meal breaks in a variety of ways, depending on individual management styles or the distinctive characteristics of a particular restaurant's staffing needs.

4.    *The Pay Premium Claim*

Notwithstanding the ruling denying class certification of their meal and rest period claims, Plaintiffs argue they can nevertheless maintain a class claim for violation of section 226.7 based solely on Defendant's alleged failure to maintain a policy concerning pay premiums for meal and rest periods that are not provided.  Plaintiffs are mistaken. "The failure to provide required meal and rest breaks is what triggers a violation of section 226.7.  Accordingly, a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks." (*Kirby v. Immoos Fire Protection, Inc*. (2012) 53 Cal.4th 1244, 1256-1257.)  Because Plaintiffs cannot establish that meal and rest periods were denied on a class-wide basis, their claim for pay premiums under section 226.7 is not amenable to class treatment.

## DISPOSITION

The petition for writ of mandate is denied.  Defendant is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.