Filed 5/22/15  Warren v. Pacific Bell CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DONNELL WARREN et. al., | |
| Plaintiffs and Appellants, | G048979 |
| v. | (Super. Ct. No. 30-2011-00477015) |
| PACIFIC BELL TELEPHONE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Gail Andrea Andler, Judge.  Affirmed.

Trush Law Office and James M. Trush; Perona, Langer, Beck, Serbin, Mendoza & Harrison, Ellen R. Serbin, Todd H. Harrison and Brennan S. Kahn for Plaintiffs and Appellants.

McGuireWoods, Matthew C. Kane, Michael D. Mandel, John A. Van Hook and Christopher A. Killens for Defendant and Respondent.

\*          \*          \*

Plaintiff Donnell Warren, appearing on behalf of himself and others employed by defendant Pacific Bell Telephone Company as Technical Sales Consultants II (TSC2), sued defendant for violating California's wage and hour laws. He alleges defendant misclassified TSC2s as exempt employees and thereby failed to pay them overtime wages or provide meal breaks. The trial court denied his motion to certify this lawsuit as a class action. Plaintiff appeals, claiming the trial court based its decision on improper criteria and incorrect legal assumptions concerning his theory of recovery and the methods of proving the predominance of common issues. His arguments lack merit and since the evidence supports the trial court's ruling, we affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

Defendant is in the business of selling communication products and services to companies, government agencies, and other organizations. Its California operations are divided into units that focus on different segments of the market. Each unit employs TSC2s to generate sales of "wireline telecommunications products and services (such as DSL lines, T1 lines, and telephone lines and systems)." Each TSC2 generally works with one or more account managers who focus on selling business customers wireless and relatively simple wireline products. TSC2s are paid a base salary, plus a commission determined by the sales they generate. Defendant classifies all TSC2s as outside salespersons, a category of employees who are exempt from compliance with the state laws concerning overtime wages and meal break requirements. (Lab. Code, §§ 226.7, subd. (e) & 1171; Cal. Code Regs., tit. 8, § 11040, subds. 1(C), 11, 12, hereafter Wage Order 4-2001.)

Between January 2005 and February 2010, plaintiff worked as a TSC2 in a unit that focused on small businesses. He filed this action in May 2011, on behalf of himself and other TSC2s. The complaint alleges defendant improperly classified TSC2s

2

as exempt employees and seeks damages and other relief for unpaid overtime, failure to provide meal breaks, failure to maintain adequate records on TSC2s' work time and meal periods, and unlawful business practices.

By stipulation, the parties simultaneously filed motions in support of and in opposition to the certification of this lawsuit as a class action. Plaintiff's motion argued certification was appropriate because "[t]he predominant issues" were "whether the TSC[2]s work 'more than half [their] working time away from the employer's place of business selling' or obtaining orders or contracts," and that defendant failed to "'establish a policy requiring meal breaks.'" He claimed the first issue could be proven by "mileage expense reports that all TSC[2]s are required to complete," while the second issue was "'suitable for class treatment'" because the "lack of a policy violates the law."

In support of the motion, plaintiff submitted his own declaration, plus excerpts from the depositions of several of defendant's executives and managers concerning their supervision of TSC2s. Plaintiff also presented a report prepared by a statistical analysis firm that reviewed mileage expense reports created by himself and over 20 other TSC2s. According to the report, "the mileage records demonstrate that none of the TSC[2]s spent enough working time on outside sales activities to meet the outside sales exemption."

Defendant's opposing motion argued "whether Plaintiff or any other TSC 2 was properly classified as exempt will require an individualized examination of the facts and circumstances of each TSC 2's employment . . . ." Similarly, it argued the alleged meal break violation would "require a fact-intensive, individualized inquiry for every TSC 2," citing evidence it "provides TSC 2s with wide discretion to perform their jobs as they see fit and take breaks whenever they want."

It supported the motion with excerpts from depositions and declarations submitted by company executives, TSC2 managers, and several TSC2s. The evidence

3

reflected defendant viewed TSC2s as an outside sales force. The focus was on whether they achieved their sales quotas, not where TSC2s performed the job.

Several managers stated that due to the nature of the products marketed by TSC2s, they encouraged TSC2s to personally visit customers and expected them to be out of the office between 60 and 80 percent of the time. Other than weekly sales meetings or the situation of a TSC2 who was not achieving his or her sales quota, the managers did not keep track of where TSC2s worked and let them schedule meal breaks.

The declarations from current and former TSC2s stated they spent more than 50 percent of their working hours out of the office, and acknowledged they had a great deal of discretion in how they schedule their work and meal breaks. The number of in-person meetings with customers and the length of each meeting varied. But the declarations asserted it generally took two or more in-person meetings with a customer to make a sale. The TSC2s additionally noted that, due to traffic or the size of a sales territory, they spent a significant amount of time driving to and from customer meetings.

Defendant also submitted excerpts from plaintiff's deposition. In it, he acknowledged working in "outside sales" and that his unit was referred to as the "feet on the street team." His supervisor's declaration stated that he had developed a performance improvement plan for plaintiff, which encouraged him to increase the number of his weekly customer meetings as a way to achieve his sales quota. Plaintiff denied being told to spend the bulk of his time outside of the office.

Defendant questioned plaintiff's statistical evidence, asserting the mileage expense reports were not a complete record of TSC2s' outside work. There was testimony the reports only validated visits to potential customers, not the amount of time a TSC2 spent with each customer. Defendant also noted several reasons why a TSC2 might not submit a mileage expense claim; ride sharing with an account manager when making a customer visit, using a company vehicle, driving only short distances, or using mileage expenses as a tax deduction instead of seeking reimbursement.

4

The trial court denied plaintiff's class certification motion. It agreed with defendant that, in assessing the legal and factual issues likely to be presented by plaintiff's theory of recovery, "individual issues predominate as to the question of how much time the employees spent on outside sales and therefore it does not appear that the question is amenable to common proof. A determination of whether an employee was misclassified would require a fact-intensive inquiry into each potential plaintiff's employment situation and individualized proof as to how and where each employee actually spent her time. Plaintiff has not alleged any common employer policy other than the exemption, because it is admitted that the TSC[2]s, while subject to managers, generally get to determine how they spend their time. There is no alleged common policy that the employees are required to do a specific task or series of tasks that take a specific amount of time which prevents them from spending time on outside sales." Thus, plaintiff had "failed to demonstrate that in the balance, common issues predominate individual issues and has not demonstrated superiority" of trying the matter as a class action.

The court declined to rule on defendant's motions to strike or quash the expert opinion testimony concerning the use of mileage expense reports. But it ruled "that even if the expert declaration/report is considered, the mileage records would not constitute common proof supporting class certification of the claims of misclassification based on the 'outside sales' exemption."

DISCUSSION

1. *The Standards for Certification of a Class Action*

Under Code of Civil Procedure section 382, "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the

benefit of all." "[C]lass certification is essentially procedural and does not involve the legal or factual merits of the action." (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 938.)

There are two requirements essential to obtain certification of a case as a class action; the moving party must "establish the existence of both an ascertainable class and a well-defined community of interest among class members." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326.) The latter requirement "embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Ibid*.)

This case involves the first community of interest factor; whether common questions of fact or law predominate in the action. The Supreme Court has declared "the 'ultimate question' for predominance is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] 'The answer hinges on "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment."'" (*Duran v. U.S. Bank National Assn.* (*Duran*) (2014) 59 Cal.4th 1, 28.) Thus, "the focus . . . is on what type of questions— common or individual—are likely to arise in the action, rather than on the merits of the case . . . ." (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 327.)

In applying this standard, ""if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages,"" while "class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment"' on common issues." (*Duran, supra,* 59 Cal.4th at p. 28.)

6

A trial court ruling on a class certification motion "must state its reasons" for its decision. (*Knapp v. AT&T Wireless Services, Inc., supra,* 195 Cal.App.4th at p. 939.) In this case, the trial court denied plaintiff's class certification motion because he asserted the outside sales exemption as the "common employer policy," and it found "[a] determination of whether an employee was misclassified would require a fact-intensive inquiry into each potential plaintiff's employment situation and individualized proof as to how and where each employee actually spent her time."

On appeal, we review the correctness of the trial court's explanation for its ruling. (*Knapp v. AT&T Wireless Services, Inc., supra,* 195 Cal.App.4th at p. 939.) Nonetheless, our review is "narrowly circumscribed," and the grant or denial of a class certification motion "'rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion.'" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022.) We may reverse this ruling only if "'(1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.'" (*Ibid.*) Further, "[p]redominance is a factual question" and in reviewing the trial court's finding on it, we presume in favor of its ruling "'the existence of every fact the trial court could reasonably deduce from the record.'" (*Ibid.*)

2. *The Outside Sales Exemption*

Wage Order 4-2001 governs the wages, hours, and working conditions, including overtime wages and meal breaks for "persons employed in professional, technical, clerical, mechanical, and similar occupations." (Cal. Code Regs., tit. 8, § 11040, subds. 1, 3, 11.) The order declares its "provisions . . . shall not apply to outside salespersons" (Cal. Code Regs., tit. 8, § 11040, subd. 1(C)), which it defines as one "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders

7

or contracts for products, services or use of facilities." (Cal. Code Regs., tit. 8, § 11040, subd. 2(M); Lab. Code, §§ 1171 & 226.7, subd. (e).)

In *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, the Supreme Court construed the outside sales definition as "tak[ing] a purely quantitative approach" that "focus[ed] exclusively on whether the individual 'works more than half the working time . . . selling . . . or obtaining orders or contracts.'" (*Id.* at p. 797.) But while a court "should consider, first and foremost, how the employee actually spends his or her time" (*id.* at p. 802), the Supreme Court has recognized "[a]ncillary questions include 'whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.'" (*Duran, supra,* 59 Cal.4th at p. 26.)

*Ramirez* concerned whether the plaintiff actually spent most of his time in sales, not on where he performed the job, and it did not involve a class certification motion. However, in *Duran, supra,* 59 Cal.4th 1, the Supreme Court did confront the propriety of certifying a wage and hour class action for employees classified as outside salespersons. *Duran* followed *Ramirez*'s approach, declaring "For the exemption to apply, a[n employee] must 'customarily and regularly work[] *more than half the working time away from the employer's place of business* selling . . . or obtaining orders or contracts . . . .'" (*Id.* at pp. 26-27.)

Further, *Duran* held: "We have observed that some common questions about the exemption 'are likely to prove susceptible of common proof' in a class action. [Citation.] Job requirements and employer expectations of how duties are to be performed may often be established by evidence relating to a group as a whole. [Citation.] But litigation of the outside salesperson exemption has the obvious potential to generate individual issues because the primary considerations are how and where the employee actually spends his or her workday. . . . Given California's uniquely

8

quantitative approach to this exemption [citation], some proof about how individual employees use their time will often be necessary to accurately determine an employer's overtime liability." (*Duran, supra,* 59 Cal.4th at p. 27.)

*3. The Trial Court's Ruling in this Case*

In his motion for class certification, plaintiff argued "[t]he predominant issue on the outside sales exemption affirmative defense is whether the TSC[2]s work 'more than half [their] working time away from the employer's place of business selling' or obtaining orders or contracts." But on appeal he contends the question is whether defendant's lack of a "policy communicating, measuring or enforcing" that "TSC2s spen[d] enough time outside the office to qualify for [the outside sales] exemption" presents a common factual question supporting class certification.

Both arguments lack merit. On plaintiff's original theory of liability, that "TSC[2]s [did not spend] 'more than half [their] working time away from the employer's place of business selling' or obtaining orders or contracts," the trial court found this "determination . . . would require a fact-intensive inquiry into each potential plaintiff's employment situation and individualized proof as to how and where each employee actually spent her time." Relying almost exclusively on his own evidence and ignoring the contrary evidence defendant presented, plaintiff argues the trial court erred in concluding individual issues predominate in this case. To the contrary, the evidence summarized above supports the trial court's finding. Under this theory of liability, "proof about how individual [TSC2s] use their time will . . . be necessary to accurately determine [defendant's] . . . liability." (*Duran, supra,* 59 Cal.4th at p. 27.) Consequently, "class treatment is not appropriate." (*Id.* at p. 28.)

Plaintiff notes all TSC2s receive the same training, are subject to the same compensation plan and, regardless of the unit in which they are employed, have the same duties. Thus, he argues that defendant's "'realistic expectations' and the 'overall

9

requirements of the job'" are issues "susceptible to common proof." While true, these matters were largely undisputed. In considering the predominance requirement the question "is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Duran, supra,* 59 Cal.4th at p. 28; *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) Plaintiff's original theory of liability requires a determination of where individual TSC2s customarily and regularly worked and, as noted, the record supports the trial court's conclusion the substantiality of this question outweighed the issues subject to being jointly tried.

The second theory of liability, first raised in this appeal, is that defendant's lack of an express policy and failure to institute measures to ensure TSC2s spent the majority of their time outside the office selling services and products or obtaining orders or contracts for them supports class certification. That is not the law. *Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440 rejected this contention in affirming an order decertifying a subclass of employees that the employer had declared exempt as outside salespersons. "[A]ppellants assume that an employer is liable if it classifies employees without regard to the law or investigating what work they do, even if the employees were, in fact, subject to the exemption. While such action on the part of an employer may be 'deliberate' and 'willful,' it is not 'misclassification.' [¶] In other words, appellants cannot recover . . . unless the . . . []class members were not, in fact, subject to the outside salesperson exemption; that determination requires consideration of the individual circumstances of each . . . []class member." (*Id.* at p. 1461; *Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 989.)

Defendant admittedly did not have an express policy on where TSC2s worked. But it acknowledged the nature of the job, selling complex wireline products to commercial enterprises, necessitated TSC2s spend a significant amount of time visiting

10

clients and it expected them to spend the bulk of their working hours out of the office. The evidence reflected defendant encouraged TSC2s to frequently visit clients to establish good customer relations and learn about the nature of the client's business so that they would have a better idea of which services and products to promote. And defendant's managers also declared they encouraged TSC2s to spend the bulk of their working day away from the office.

Plaintiff cites several cases he claims support a reversal of the trial court's decision. They are distinguishable because none of them involved the outside salesperson exemption. (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286 [misclassification of delivery drivers]; *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1146-1148 [skilled laborers retained under written agreements declaring them to be independent contractors, not employees]; *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 232-239 [security guards required to take on-duty meal breaks and not leave posts for rest breaks]; *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 716-731 [skilled laborers in the telecommunications industry; similar to *Bradley*]; *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 996-997 [insurance claims representatives; denial of compensation for pre-shift work].)

Another case plaintiff relies on is *Sav-On Drugs Stores, Inc. v. Superior Court, supra,* 34 Cal.4th 319. In that case the Supreme Court *affirmed* an order *granting* certification of a class action involving store managers where the parties presented conflicting evidence on the propriety of class certification. In so ruling the court noted, "Defendant, of course, does not concede the viability of plaintiffs' misclassification theories . . . [a]nd . . . challenges plaintiffs' allegations respecting the effect of standardization in defendant's operations, pointing out . . . that its responses to plaintiffs' interrogatories state that the actual tasks performed by class members and the amount of time spent on those tasks vary significantly from manager to manager and cannot be

11

adjudicated on a class-wide basis. But the trial court was within its discretion to credit plaintiffs' evidence on these points over defendant's, and we have no authority to substitute our own judgment for the trial court's respecting this or any other conflict in the evidence." (*Id.* at p. 331.)

The same is true here. "Critically, if the parties' evidence is conflicting on the issue of whether common or individual questions predominate (as it often is and as it was here), the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met—and doing so is not, contrary to [the appellant's] apparent view, an improper evaluation of the merits of the case." (*Dailey v. Sears, Roebuck & Co., supra,* 214 Cal.App.4th at p. 991.) Thus, "'it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'" (*Sav-On Drugs Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 331.) As a consequence, it was not enough for plaintiff to merely assert he presented evidence from which the trial court could have found in his favor.

Next, plaintiff contends the mileage expense reports and the expert testimony based on a statistical sampling of them supported his motion and the trial court erred in ruling it did not constitute common proof of defendant's misclassification of TSC2s. These arguments misconstrue the trial court's ruling. It held "that even if the expert declaration/report is considered, the mileage records would not constitute common proof *supporting class certification of the claims misclassification based on the 'outside sales' exemption*." (Italics added.) Again, there was conflicting evidence on whether the mileage expense reports constituted common proof relevant to the classification of TSC2s as outside salespersons. Defendant presented evidence that these records and the report based on a sampling of them were of questionable credibility for a variety of reasons. The weight to be given to this evidence was for the trial court to decide. We cannot say the trial court abused its discretion in finding the statistical evidence and the

12

expert testimony based on it lacked sufficient persuasiveness to support a finding that common issues predominated in this case.

Finally, the reasons supporting the trial court's rejection of class certification for plaintiff's overtime wages claim equally apply to his allegation that defendant failed to provide TSC2s with meal breaks. An employer "satisfies th[e] obligation" to provide meal breaks "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted . . . break, and does not impede or discourage them from doing so." (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1040.) Here, the evidence reflected managers allowed TSC2s to schedule their own time, including when they took meal breaks. Consequently, whether a TSC2 took a meal break was largely subject to individual rather than common proof.

## DISPOSITION

The order is affirmed. Respondent shall recover its costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

IKOLA, J.

13